UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MALIKAH ASANTE-CHIOKE                              CIVIL ACTION

VERSUS                                            NO.  22-4587

NICHOLAS DOWDLE, ET AL  .                         SECTION "J"(5)

## ORDER AND REASONS

Before the Court is a *Rule 12(b) Motions to Dismiss* **(Rec. Doc. 36)** filed by
Defendants, the State of Louisiana through the Department of Public Safety and
Corrections, Col. Lamar A. Davis, and Nicholas Dowdle. The motion is opposed by
Plaintiff, Malikah Asante-Chioke (Rec. Doc. 40), and Defendants filed a reply (Rec.
Doc. 44). Having considered the motion and memoranda, the record, and the
applicable law, the Court finds that the motion should be **GRANTED IN PART AND
DENIED IN PART.**

## FACTS AND PROCEDURAL BACKGROUND

This case arises from the death of Jabari Asante-Chioke. On November 21,
2021, Louisiana State Police Officer Nicholas Dowdle, East Jefferson Levee District
Police Officers Jonathon Downing and Gerard Duplessis, and other officers ("John
Does") serving LSP or EJLD (together, the "Officer Defendants") shot and killed Mr.
Asante-Chioke after a citizen notified a nearby police officer that Mr. Asante-Chioke
was visibly distressed, on foot on the side of Airline Highway, and carrying what were
later identified as a gun and knife. Plaintiff, Malikah Asante-Chioke ("Plaintiff" or
"Mr. Asante-Chioke") is Mr. Asante-Chioke's daughter, and she brings this action
individually and on behalf of her father. (Rec. Doc. 22).

1

After the passerby notified the nearby police officer, two Louisiana State Police Department ("LSP") officers and two East Jefferson Levee District officers, including Defendants Dowdle, Downing, and Duplessis, located Mr. Asante-Chioke and parked their vehicles along the roadway. *Id.* at 8. Video from a witness (as described in the pleadings) shows that the officers attempted to approach and apprehend Mr. Asante-Chioke as he jogged slowly away from them, westbound along the eastbound lane. *Id.* at 8-9. At one point, Mr. Asante-Chioke put the gun he was carrying to his own head. *Id.* at 9. As Mr. Asante-Chioke jogged away, the officers screamed, "get on the ground," "you better fucking stop!" "get on the fucking ground! I swear to God I'll fucking shoot you!" and "I will fucking kill you!" *Id.*

One officer began jogging behind and toward Mr. Asante-Chioke, and Mr. Asante-Chioke slowed to a walk. *Id.* That officer stopped about ten feet from Mr. Asante-Chioke and advanced with his weapon drawn and pointed at him, screaming "get on the ground." *Id.* at 10. Mr. Asante-Chioke, without turning or making eye contact, "raised his arms parallel to the ground and then dropped them before raising his right arm with the gun in hand in the direction of the third officer. When Mr. Asante-Chioke's right arm reached a forty-five-degree angle the third officer opened fire on Mr. Asante-Chioke." *Id.* "Almost immediately," Mr. Asante-Chioke dropped the gun. *Id.*

After he dropped the gun, the officers continued to shoot at him, and after several bullet wounds, Mr. Asante-Chioke fell to the ground. *Id.* Defendants Dowdle, Downing, and Duplessis fired a total of thirty-six rounds at Mr. Asante-Chioke, and

his autopsy revealed that he was shot twenty-four times (six gunshot wounds on his arms, eight on his legs, and ten on his torso), causing fatal wounds. *Id.* An LSP spokesperson stated on a news broadcast that the first officer who shot Mr. Asante-Chioke attempted to tase him, but the autopsy revealed no marks consistent with taser use. *Id.* at 11.

Plaintiff filed her original complaint on November 18, 2022, individually and on behalf of her father, including § 1983 claims, wrongful death claims, survival claims, and battery claims against the Officer Defendants. (Rec. Doc. 1). The original complaint also included claims for negligent supervision against the Supervisor Defendants and training and supervisory liability against the State of Louisiana. *Id.* Movants previously filed motions to dismiss in response to Plaintiff's Complaint. However, after Plaintiff filed an Amended Complaint (Rec. Doc. 22), the Court denied the motions as moot, without prejudice. (Rec. Doc. 23). Plaintiff argued that the Amended Complaint corrected the deficiencies, added an additional supervisor defendant (Doe), and added an additional claim against the Supervisor Defendants under 42 U.S.C. § 1983, alleging unlawful seizure. (Rec. Doc. 20).

On June 21, 2023, Plaintiff voluntarily dismissed her claims as to the State of Louisiana through the Department of Public Safety & Corrections. (Rec. Doc. 35). Three Defendants (the State of Louisiana through the Department of Public Safety & Corrections, Col. Lamar A. Davis, and Nicholas Dowdle) filed the instant motion on June 23, 2023. (Rec. Doc. 36). Movants seek dismissal under Rules 12(b)(1) and 12(b)(6).

EJLD officers Downing and Duplessis filed answers on June 23, 2023 (Rec. Docs. 37, 38), but they also filed a "response" in support of the instant motion on July 17, 2023. (Rec. Doc. 39). On July 18, 2023, Plaintiff filed her response to the instant motion (Rec. Doc. 40), and Plaintiff and Defendant Lamar A. Davis also stipulated to dismiss Plaintiff's 24 U.S.C. § 1983 Unlawful Seizure claim against Davis. (Rec. Doc. 41). Movants filed their reply on July 27, 2023.

## LEGAL STANDARD

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). If a court lacks subject matter jurisdiction, it should dismiss without prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010). When "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (internal quotation marks and citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## <u>DISCUSSION</u>

Because Plaintiff voluntarily dismissed the State of Louisiana through the Department of Public Safety and Corrections, the Court will only address the arguments regarding claims against the remaining movants: Davis and Dowdle.

## I.    **Subject Matter Jurisdiction**

First, Davis argues that this Court lacks subject matter jurisdiction for Plaintiffs' claims against him in his official capacity, even though the Amended Complaint only named him in his individual capacity. (Rec. Doc. 36-1, at 5). The

Amended Complaint names Colonel Davis, the Superintendent of the Louisiana State Police, "in his individual capacity" as "vicariously liable under state law for the negligent acts and omissions of the defendants operating under his supervision." (Rec. Doc. 22, at 6). The Amended Complaint goes on to allege that Davis, in his official capacity, is the political subdivision with authority to supervise LSP. *Id.* at 22. Relatedly, Count II, a *Monell* claim against Davis and EJLD Supervisor Doe, alleges that Davis and EJLD Supervisor Doe, "in their official capacity, are the political subdivisions with authority to supervise officers of LSP and EJLD, respectively," and are therefore the "final policymakers." *Id.* at 22. Plaintiff has since dismissed the claim in Count II. (Rec. Doc. 41).

Davis argues that, in his individual capacity, he cannot be held vicariously liable for those under his supervision, because that claim is actually a thinly-veiled official capacity claim, which is a claim against the State. (Rec. Doc. 36-1, at 5). Next, he contends that the Eleventh Amendment bars this suit against him as a state official acting in his official capacity. *Id.* at 7-8. Finally, Davis and Dowdle assert that, whether brought against them in their individual or official capacities, Plaintiff's Louisiana state law claims are barred because the state of Louisiana is the real substantial party in interest. *Id.* at 8.

In response, Plaintiff first argues that Davis has no basis for converting her claims against him in his individual capacity into official-capacity claims. (Rec. Doc. 40, at 13). Instead, Plaintiff brought these claims against Davis in his individual capacity because they pertain to his individual conduct: he was personally on notice

of the need to train and supervise LSP officers, and he personally acknowledged that he had personal responsibility not to wait to address deficiencies at LSP. *Id.* at 15 (citing Jim Mustian, Louisiana State Police Undergo Review After String of Beatings of Black Motorists, AP (Mar. 14, 2022), https://www.wwltv.com/article/news/crime/la-state-police-undergo-outside-review/289-d40aaa9c-91a3-49e2-8f3a-3cb2c7883dcb).

Because Plaintiff has since voluntarily dismissed her *Monell* claim against Davis in his official capacity as a final policymaker for LSP, only her state law claims against Davis in his individual capacity remain.[1] Davis and Dowdle argue that, whether in their individual or official capacities, Plaintiff's five state law claims are barred because they were acting within the course and scope of their employment with the State at the time of the alleged negligence. (Rec. Doc. 36-1, at 10). Therefore, Plaintiff's claims for wrongful death, survival, battery, negligence, and negligent supervision and training will inevitably involve the Louisiana public treasury, so the claims must be dismissed for lack of subject matter jurisdiction under the Eleventh Amendment. *Id.*

Claims against government officials in their individual capacities "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "The Eleventh Amendment does not

---

[1] Davis argues in his reply that, despite the dismissal of this claim, in paragraph 86 of the Amended Complaint (which was not stricken by the dismissal), Plaintiff also identifies Davis in his official capacity in her claims regarding his alleged negligent supervision and training of officers in Count VII, so she also has claims against him in his official capacity. (Rec. Doc. 44, at 2). Count VII of the Amended Complaint claims that Davis (along with Supervisor Doe, of the EJLD) failed to sufficiently supervise and train officers, and that failure to act was negligent under Louisiana law. (Rec. Doc. 22, at 27-28). Paragraph 86 alleges that Davis developed and maintained the policies, customs, and practices that caused violations of Mr. Asante-Chioke's constitutional rights. (Rec. Doc. 22, at 22). This language refers to Plaintiff's *Monell* claim, which she dismissed, and the Court concludes that the negligent training and supervision claim in Count VII is alleged against Davis in his individual capacity.

erect a barrier against suits to impose individual and personal liability on state officials under § 1983." *Id.* at 30-31 (internal quotation marks omitted). In an individual capacity suit, government officials "come to court as individuals, and the real party in interest is the individual, not the sovereign." *Lewis v. Clarke*, 581 U.S. 155, 163–64 (2017) (internal citations and quotation marks omitted). However, the Eleventh Amendment bars suits against state officials when the state is the real, substantial party in interest. *Reyes v. Sazan*, 168 F.3d 158, 162 (5th Cir. 1999) (internal citation omitted).

In *Reyes*, the Fifth Circuit affirmed a district court ruling that the Eleventh Amendment afforded no defense to state law claims asserted against officers personally. *Id.* at 163. Because the plaintiff in *Reyes* did not assert that personal liability of state officials would be imputed to the employer, the Court found that "there is at least a fact issue concerning whether the officers here acted intentionally or with gross negligence" and "the officials might not receive indemnification" from their state employer. *Id.*; *see also Downing v. Williams*, 624 F.2d 612, 626 (5th Cir. 1980) (vacated on other grounds) ("an indemnity statute is only an agreement between the state and these individuals and cannot thereby be converted into an extension of Eleventh Amendment immunity by the state").

Plaintiff cites to *Lewis v. Clarke*, where the Supreme Court held that an "indemnification provision cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak." 581 U.S. at 164–65. In that case, the defendant argued that because a sovereign tribe,

rather than the defendant, would be required to pay any successful claims from its own funds, the sovereign was the real party-in-interest. *Id.* at 164. Noting that the Supreme Court had never held that a § 1983 suit against a state officer in his individual capacity implicates the Eleventh Amendment and a State's sovereign immunity from suit, the Court explained that "the critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab." *Id.* at 165.

Here, Davis and Dowdle do not respond to this binding precedent, but instead argue that Plaintiff's complaint is contradictory, alleging both that the Defendants are individually responsible for damages and that the State of Louisiana (through the Department of Public Safety and Corrections) is ultimately responsible for the same conduct. Considering the question of who may be legally bound by this Court's adverse judgment, the Court finds that, like the plaintiff in *Reyes*, Plaintiff here has not alleged any indemnification provision requiring the state to pick up the tab, and fact issues remain so to whether Louisiana's indemnification statute would even cover the officers' alleged conduct. Further, even if Plaintiff had alleged a relevant indemnification statute, doing so would not necessarily extend sovereign immunity to Dowdle and Davis as a matter of law, because fact issues remain concerning their actions. Accordingly, as to Defendants' 12(b)(1) arguments that Plaintiffs' state law claims must be dismissed under the Eleventh Amendment, the motion must be denied.

## II.    Failure to State a Claim

### a. Claims against Col. Davis

Defendants argue that, in the alternative to dismissal for lack of subject matter jurisdiction, this Court should dismiss Plaintiffs' state law claims against Davis for failure to state a claim. "Insofar as the allegations against Col. Davis concern supervisory liability predicated on a theory of vicarious liability," they argue that it is well settled law that liability under § 1983 cannot be imposed on the basis of respondeat superior. (Rec. Doc. 36-1, at 10). Plaintiff does not dispute this argument, and the Court agrees that "under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). However, in addition to her vicarious liability claim, Plaintiff also alleges a claim against Davis for negligent supervision and training.

Davis contends that the Amended Complaint fails to sufficiently state a negligent supervision and training claim and that he is entitled to discretionary immunity under Louisiana law. *Id.* at 13-14. A supervisor may be liable for failure to supervise or train if "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). "To establish deliberate indifference, 'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.'" *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)).

10

Furthermore, "for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir.2005)). Moreover, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.*

Plaintiff's negligent supervision and training claim against Davis in his individual capacity notes that, over the past several decades, public letters and media coverage has revealed that "it has become public knowledge that LSP's training of its officers is deeply racist, 'discriminatory,' and 'repugnant.' (Rec. Doc. 22, at 26). Plaintiff specifically alleges that LSP fails to properly train officers on "de-escalation tactics and on how to approach incidents involving individuals suffering from mental health issues," including how to negotiate the situation and approach those experiencing mental health crises, the difference between verbal and non-verbal communication, and how to select a response in potentially violent situations. *Id.* at 27. Plaintiff also alleges that LSP's failure to supervise and discipline officers for excessive force has allowed a significant number of cases in the past decade where LSP officers used excessive force and subsequently covered up their use of excessive force. *Id.* As to Davis, Plaintiff notes that Davis himself acknowledged LSP's deficiencies and that he supports hiring an outside consultant to assess LSP's culture and policies on use of force, hiring, and training, indicating that he knew or should have known that the officers under his supervision were receiving insufficient

training and supervision regarding de-escalation tactics and use of deadly force. *Id.* at 27-28. Finally, Plaintiff alleges that the lack of supervision and training existed because Davis exhibited deliberate indifference to the problem, and this failure to act was negligent. *Id.* at 28.

For the purpose of withstanding the motion to dismiss, these allegations are sufficient. Plaintiff has alleged facts showing that Davis was aware of the defective training and supervision at LSP, specifically regarding use of force at issue in this case. Plaintiff claimed that Mr. Asante-Chioke was outwardly experiencing a mental health crisis, and she has alleged facts that a bystander was concerned that Mr. Asante-Chioke was experiencing a mental health crisis. Plaintiff has also alleged, with specificity, that LSP's de-escalation training for such crises, like the circumstance at issue here, was defective, because LSP's training does not include information on how to approach individuals experiencing mental health crises and selecting appropriate communication and responses in potentially violent situations. Accordingly, Plaintiff has stated a claim against Davis in his individual capacity for negligent supervision and training because she sufficiently alleged that he implemented unconstitutional policies that causally resulted in the constitutional injury. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

Next, Davis argues that, even if Plaintiff stated a claim for negligent supervision and training, he has discretionary immunity related to his policy decisions on training and supervision. Louisiana's discretionary immunity statute

provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. Rev. Stat. § 9:2798.1(B). In determining whether immunity applies, Louisiana courts employ the two-step test set out by the United States Supreme Court in *Berkovitz v. United States*, 486 U.S. 531, 108 (1988), for determining immunity under the Federal Tort Claims Act. *Commerce & Indus. Ins. Co. v. Grinnell Corp.*, 280 F.3d 566, 571 (5th Cir. 2002). The first step requires that the action at issue be discretionary. *Id.* Conduct cannot be discretionary unless it involves an element of judgment or choice. Thus, immunity does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* (quoting *Berkovitz*, 486 U.S. at 536).

If there is no statutory, regulatory, or procedural policy directive dictating the employees' course of conduct, then the court proceeds to the second step of the test. The second step requires a court to "determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 572 (quoting *Berkovitz*, 486 U.S. at 536–37). The discretionary immunity statute was designed to protect governmental actions and decisions based on considerations of public policy. *See id.* Thus, the statute immunizes a public entity or employee from suit "[o]nly if the discretionary act was grounded in social, economic, or political policy." *Id.*

The immunity offered by Louisiana's discretionary immunity statute is in the nature of an affirmative defense which must be specifically pleaded in the defendant's

answer. *White v. City of New Orleans*, 806 So. 2d 675, 677 (La .App. 4 Cir. 2001). As such, the defendant bears the burden of proving that this statutory immunity applies. *Johnson v. Orleans Par. Sch. Bd.*, 975 So.2d 698, 710 (La. App. 4 Cir. 2008).

Here, instead of proving that this statutory immunity applies, Davis argues that the complaint provides nothing alleged with specificity sufficient to overcome the application of discretionary immunity. (Rec. Doc. 36-1, at 15). Specifically, Davis argues that Plaintiff did not allege what specific training or supervision was warranted and not provided. *Id.* This is not quite true; the Amended Complaint provides a list of tactics for de-escalation in approaching individuals suffering from mental health issues. (Rec. Doc. 22, at 27). Next, he argues there is lack of factual support in the complaint that the interaction with Mr. Asante-Chioke suggested he was suffering from mental illness. (Rec. Doc. 36-1, at 15). This is also not quite true; the Amended Complaint states that Mr. Asante-Chioke was "visibly distressed and was traveling along the highway on foot," and "a passer-by who saw Mr. Asante-Chioke thought he might be experiencing a mental health crisis and subsequently flagged down a police officer." (Rec. Doc. 22, at 8). Third, Davis argues that the "allegations fail to consider that, whether suffering from mental illness or not, Chioke was armed and raised his gun in the direction of an officer." (Rec. Doc. 36-1, at 15). This is also not exactly true; the Amended Complaint states, under the heading "The Failure to Deescalate," when Mr. Asante-Chioke's right arm (holding the gun) reached a forty-five degree angle, an officer started shooting at him, and he dropped the gun almost immediately. (Rec. Doc. 22, at 10). After he dropped the gun, the

officers continued to fire at him, resulting in twenty-four gunshot wounds. *Id.* Plaintiff alleges with specificity that both before and after he dropped the gun, "no de-escalation tactics were used by the Officer Defendants before they killed Mr. Asante-Chioke:" they did not attempt to speak to him in a calm manner, attempt non-lethal force, and instead approached him with their guns drawn, screaming at him. *Id.* at 19.

Further, it is not apparent on the face of the pleadings in this case that, in training and supervising, Davis exercised any discretion grounded in social, economic, or political policy. In the instant motion, Davis has not provided any detail as to how his actions constitute policy decisions, rather than operational decisions, so he has not carried his initial burden of demonstrating that discretionary immunity applies. Accordingly, for the purposes of the motion to dismiss, Plaintiff has pleaded sufficient allegations to state a claim against Davis in his individual capacity. Davis may raise the defense of discretionary immunity again in a summary judgment motion, after suitable discovery.

### b. Claims against Dowdle

Plaintiff alleges a § 1983 claim against the Officer Defendants, including Officer Dowdle, for the use of excessive force for each of their shots that struck Mr. Asante-Chioke after he was incapacitated, disarmed, and no longer a threat. Dowdle, an LSP officer, does not dispute that he was one of the officers who shot Mr. Asante-Chioke. However, Dowdle argues that because Plaintiff did not specify how many shots Dowdle fired after it was clear to him that Mr. Asante-Chioke no longer posed

a threat, that the allegations do not show a clear violation and that he is entitled to qualified immunity. (Rec. Doc. 36-1, at 17-19).

First, Davis argues that, because he asserted the defense of qualified immunity, the Plaintiff must satisfy a heightened pleading standard, including why the defendant-official cannot successfully maintain the defense of immunity. (Rec. Doc. 36-1) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). However, Davis mischaracterizes the pleading standard in this case. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must plead "two—and only two—allegations. . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)). To overcome qualified immunity, a plaintiff must plead facts, with the minimal specificity to satisfy *Twombly* and *Iqbal*, "that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). Thus, at this stage, Plaintiff need not explain why Dowdle cannot maintain a qualified immunity defense with any greater specificity

16

than the rest of her claims, and must instead simply plead facts allowing this Court

to draw a reasonable inferences as to Dowdle's liability and qualified immunity.

Second, Dowdle argues that Plaintiff fails to state a claim because she does not

allege any delay between the first and subsequent shots that the Officer Defendants

fired at Mr. Asante-Chioke. (Rec. Doc. 36-1, at 17). Thus, Dowdle does not challenge

the second element required to plead a § 1983 claim (whether an alleged deprivation

was committed by a person acting under the color of state law), but he does dispute

the first element: whether Plaintiff alleged a violation of a federal right.

In this case, Plaintiff brought a § 1983 claim against Dowdle for excessive force

in violation of the Fourth Amendment's right to be free from unreasonable seizures.

(Rec. Doc. 22, at 20).  To prove an excessive-force claim, "a plaintiff must show (1) an

injury, (2) which resulted directly and only from the use of force that was clearly

excessive, and (3) the excessiveness of which was clearly unreasonable." *Manis v.*

*Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). Deadly force is excessive and unreasonable

"unless the officer has probable cause to believe that the suspect poses a threat of

serious physical harm, either to the officer or to others." *Romero v. City of Grapevine*,

888 F.3d 170, 176 (5th Cir. 2018). And force that is "reasonable at one moment can

become unreasonable in the next if the justification for the use of force has ceased."

*Lytle v. Bexar Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009).

In *Roque v. Harvel*, the Fifth Circuit confirmed that, after incapacitating a

suspect who posed a threat, an officer cannot continue using deadly force. 993 F.3d

325, 336 (5th Cir. 2021). In that case, police shot and killed Jason Roque, a man who

was experiencing a mental health crisis while holding a pistol, which was later determined to be a BB gun. *Id.* Roque and his mother both called 911, and multiple officers responded. *Id.* at 330. Roque pointed the gun at his head and turned away from the officers, and one officer yelled for him to put the gun down. *Id.* Roque then turned to face the officers with the gun pointed in the air, and Officer Harvel shot Roque with a semi-automatic rifle. *Id.* Roque immediately doubled over and dropped the gun, and two seconds after the first shot, Harvel fired a second shot that missed Roque, and then a third shot that killed Roque. *Id.* Harvel maintained that he took each shot because he thought Roque was a threat to his mother's life and safety, and Roque's parents sued Harvel under § 1983. Harvel raised the defense of qualified immunity, and the district court granted his motion as to the first shot but denied the motion as to the second and third shots. *Id.* at 331.

In affirming the district court's conclusion, the Fifth Circuit explained that excessive force claims are fact-intensive, and courts must examine the totality of the circumstanced to determine whether an officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. *Id.* at 333. Because it was clearly established "and possibly even obvious" on the date of the incident that an officer cannot continue using deadly force after incapacitating a suspect who posed a threat, and resolving all factual disputes in the plaintiffs' favor, the Court held that Officer Harvel was not entitled to qualified immunity. *Id.* at 339.

Dowdle highlights an earlier case: *Plumhoff v. Rickard*, where police officers fired fifteen shots in ten seconds to prevent a suspect (Rickard) from fleeing in his

car. (Rec. Doc. 36-1, at 18) (citing 572 U.S. 765 (2014)). In that case, the Court found that Rickard's "outrageously reckless driving posed a grave public safety risk," and the high-speed chase continued after the officers shot at him—in fact, he managed to drive away after the police tried to block his path. *Plumhoff*, 572 U.S. at 777. Although the petitioner argued that the sheer number of shots rendered the force excessive, the Supreme Court concluded that, during the 10-second span when all the shots were fired, Rickard never stopped trying to flee. *Id*. The Court ultimately held that "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended. *Id*. However, "this would be a different case if petitioners initiated a second round of shots after an initial round had clearly incapacitated Ricard and had ended any threat of continued flight, or if Rickard had clearly given himself up." *Id*.

Indeed, the case here is the type of case that the Supreme Court anticipated: Plaintiff alleged that officers initiated a second round of shots after an initial round clearly incapacitated Mr. Asante-Chioke. The Amended Complaint states that Mr. Asante-Chioke dropped the gun in his hand "almost immediately" after one of the Officer Defendants fired the first shot, and at that point, Mr. Asante-Chioke was "no longer armed or a threat." (Rec. Doc. 22, at 10). These allegations, taken as true, are sufficient to plead that the Officer Defendants violated Mr. Asante-Chioke's Fourth Amendment rights for the shots they fired after he was clearly incapacitated.

Third, Dowdle argues that Plaintiff's allegations are insufficient because they do not provide "a specific or clear allegation against Dowdle of how many shots he

fired, the time frame of the shots, or whether any shots were specifically fired by him after it was clear from his vantage point that [Mr. Asante-Chioke] became incapacitated to the threat that he would no longer represent a threat to an officer under the circumstances." (Rec. Doc. 36-1, at 19). Dowdle does not cite any authority requiring an accounting of each officer's shots on a motion to dismiss, instead arguing again that "because qualified immunity is involved. . . there is a heightened pleading standard." *Id.*

As the Court explained above, Dowdle is incorrect about this "heightened" pleading standard in the face of a potential qualified immunity defense. A pleading's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint "must allege facts 'plausibly suggesting' illegal conduct such that the allegations are no longer in 'neutral territory.'" *Armstrong v. Ashley*, 60 F.4th 262, 270 (5th Cir. 2023) (citing *Twombly*, 550 U.S. at 557). Plausible grounds to infer illegal conduct "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the illegal conduct. *Twombly*, 550 U.S. at 556.

Here, the Amended Complaint alleged that four officers, including Dowdle, fired 36 shots at Mr. Asante-Chioke, and the officers fired the majority of those shots after Mr. Asante-Chioke dropped his gun, fell to the ground, and was incapacitated. (Rec. Doc. 22, at 10). Accepting all the well-pled facts in the Amended Complaint as

true, these facts raise a reasonable expectation that discovery will reveal evidence that Dowdle fired shots after Mr. Asante-Chioke no longer posed a threat.

Finally, Dowdle requests that, if the Court denies the motion, that discovery should be limited to issues of qualified immunity. If a court finds that a plaintiff has pled facts that "allow the court to draw a reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity," a court may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim," if the court "remains unable to rule on the immunity defense without further clarification of the facts." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). Considering the circumstances of this case, the specificity of the facts pled in the Amended Complaint, and the court's discretion in issuing this type of discovery order, such an order is not necessary in this case.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that filed the *Rule 12(b) Motions to Dismiss* **(Rec. Doc. 36)** is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's vicarious liability claims against Col. Davis are dismissed. All other requested relief is denied.

New Orleans, Louisiana, this 31st day of August, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE