UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MALIKAH ASANTE-CHIOKE                    CIVIL ACTION

VERSUS                                    NO. 22-4587

NICHOLAS DOWDLE, ET AL.                  SECTION: "J" (3)

### ORDER AND REASONS

This case "arises from the death of Jabari Asante-Chioke wherein police officers shot and killed Asante-Chioke after a report that he was visibly distressed, on foot at the intersection of Airline Drive and North Causeway Boulevard in Jefferson Parish, Louisiana, and carrying what was later identified as a gun and knife." *Asante-Chioke v. Dowdle*, 103 F.4th 1126, 1127 (5th Cir. 2024). Discovery at this stage remains narrowly tailored to Defendants Louisiana State Police Officer Nicholas Dowdle and East Jefferson Levee District Officers Jonathon Downing and Gerard Duplessis's (the "Officer Defendants") defense of qualified immunity.[1]

Plaintiff Malikah Asante-Chioke, individually and on behalf of her deceased father, filed a Motion to Compel (R. Doc. 165) Defendants to respond to interrogatories and requests for production relative to the training of the Officer Defendants and others in their department.[2] The motion focuses on de-escalation tactics and interaction with individuals experiencing mental health difficulties.[3]

---

[1] R. Doc. 155.
[2] R. Doc. 165-1.
[3] *Id.*

1

Defendants argue that the training evidence Plaintiff seeks is not within the present scope of discovery on qualified immunity.[4] They are correct.

The Fifth Circuit identified the scope of discovery as follows: "the defense of qualified immunity turns on whether Dowdle continued using deadly force by firing shots at Asante-Chioke after he became incapacitated." *Asante-Chioke*, 103 F.4th at 1131; *see also Roque v. Harvel*, 993 F.3d 325, 336–39 (5th Cir. 2021) (explaining that an officer continuing to shoot at an incapacitated individual is a clearly established constitutional violation). As the Fifth Circuit noted, "there were multiple alleged shooters from at least two different law enforcement agencies, thirty-six rounds fired, and a dispute as to whether a single defendant (Dowdle) used deadly force after Asante-Chioke became incapacitated." *Id.* It explained that limited discovery was necessary because it might uncover "whether Dowdle fired any shots; how many if so; and when, in relation to Asante-Chioke's actions and death[,]" and thus demonstrate whether Dowdle is entitled to qualified immunity as to Plaintiff's claims. *Id.*

Plaintiff raises the same general allegations against Dowdle, Downing, and Duplessis, thus creating a factual dispute relative to whether any defendant continued to fire on Asante-Chioke after he became incapacitated.[5] Information as to officer training is not relevant to that factual dispute. Thus, Plaintiff has not shown that the training evidence she seeks is relevant to the qualified immunity inquiry at this stage. This is reason enough to deny the motion.

---

[4] R. Docs. 169; 170.
[5] *See* R. Doc. 83 at 1–2.

Further, Plaintiff's briefing presupposes that discovery is permissible as to all issues relevant to qualified immunity. Precedent confirms, however, that discovery is not so broad at this stage. There are two prongs of the qualified immunity inquiry: whether a constitutional right was violated, and whether that right was "'clearly established at the time of the challenged conduct.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). District courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)). Yet when it comes to the issue of limiting discovery on qualified immunity, the U.S. Supreme Court has made plain that discovery is limited to the "threshold immunity question" of "the currently applicable law [and] whether that law was clearly established at the time the challenged action occurred[.]" *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (quoting *Harlow*, 457 U.S. at 818). Much of the jurisprudence limiting discovery to "qualified immunity" therefore must be understood as limiting discovery to facts that are relevant to this threshold question. Thus, it would be premature to allow discovery on all facts arguably relevant[6] to the alleged constitutional violation.

The primary cases that Plaintiff cites are distinguishable because they considered training within the *first* prong of the qualified immunity inquiry—i.e., assessing, on the specific facts of a case, whether a constitutional violation occurred. In these cases, the Fifth Circuit found officer training relevant to whether, at the

---

[6] The undersigned does not reach the potential relevance of training information to the first prong of qualified immunity—i.e., whether a constitutional violation occurred.

moment of the use of force, a reasonable officer with that training would have understood that the force could be deadly or could induce an incapacitated individual to behave in a manner that may be mistaken for continued resistance.

For example, in *Timpa v. Dillard*, the Fifth Circuit reversed the district court's grant of qualified immunity to an officer who had knelt on an individual in a prone position until he died from positional asphyxiation. 20 F.4th 1020, 1031 (5th Cir. 2021). In doing so, the Fifth Circuit observed that the "risks of asphyxiation in this circumstance should have been familiar to [the officer] because he had received training on the use of a prone restraint to control subjects in a state of excited delirium" and because a "jury could find that an objectively reasonable officer with [such] training would have concluded that Timpa was struggling to breathe, not resisting arrest." *Id.* But *Timpa*'s discussion of the *second* prong of qualified immunity contains no reference to training.[7] Thus, the cases relied on by Plaintiff indicate that officer training can be relevant to assessing, on the specific facts of a case, whether an unconstitutional use of force occurred. But there is no basis to conclude that, on the facts here, officer training is relevant to whether that use of force violated clearly established law.

---

[7] *See also Austin v. City of Pasadena, Texas*, 74 F.4th 312, 325 (5th Cir. 2023) (reversing the district court's grant of qualified immunity to officers who had repeatedly tased a detainee suffering from a seizure, ultimately resulting in his death, when at least one involved officer testified she had received training in seizure response and "a jury could find that a reasonable officer would have concluded that Shaw was continuing to experience a seizure or was in a postictal state, not actively resisting the officers").

4

Moreover, the Fifth Circuit has held that the "excessive force inquiry is confined to whether the [officer] was in danger *at the moment of the threat* that resulted in" the use of force. *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 493 (5th Cir. 2001) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied,* 506 U.S. 973 (1992) (emphasis original)). If an individual's "movements gave the officer reason to believe, at that moment, that there was a threat of physical harm[,]" it is irrelevant what took place before the moment of force. *Fraire*, 957 F.2d at 1275–76 (discussing *Young v. City of Killeen, Tex.*, 775 F.2d 1349, 1352–53 (5th Cir. 1985)). In such a situation, even a negligent use of deadly force is not a constitutional violation if a reasonable officer could have believed there was a threat of serious harm. *Id.*; *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."). This further supports the conclusion that information as to training is not relevant to the second prong of qualified immunity.

Finally, it is true, as Plaintiff argues, that the Fifth Circuit has found the "existence and corresponding notice to officers" of training and departmental policies "relevant in analyzing the reasonableness of a particular use of force" when considering a qualified immunity defense under certain limited circumstances. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 732 n.8 (5th Cir. 2018) (citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 448–449 (5th Cir. 1998)). Even setting aside the distinction between the first and second prongs of qualified immunity, those

cases are inapposite. It is well established that the doctrine of qualified immunity is intended to protect "all but the plainly incompetent [officers] or those who *knowingly* violate the law." *Ashcroft*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (emphasis added). Thus, although qualified immunity rests almost entirely on an objective standard, precedent contemplates potential liability when an officer has personal knowledge that his use of force is deadly, even if the hypothetical reasonable officer would be ignorant of that fact.[8] Accordingly, a factual dispute about whether an officer *knew* a particular use of force was deadly can preclude a grant of qualified immunity at the summary judgment stage. *Malley*, 475 U.S. at 341; *see also Darden*, 880 F.3d at 732 n.8. But this is not a case that implicates an officer's subjective knowledge. There is no contention that either the officers at the scene nor a hypothetical reasonable officer would be ignorant of the fact that shooting an individual may cause his death.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 165) is **DENIED**.

New Orleans, Louisiana, this 20th day of December, 2024.

EVA J. DOSSIER<br>
UNITED STATES MAGISTRATE JUDGE

---

[8] A review of the jurisprudence indicates that a relatively narrow subset of cases implicates this unusual scenario. For example, qualified immunity may not apply if an officer *knows* with subjective certainty that he is causing positional asphyxia and that it will be fatal even though the hypothetical reasonable officer would be ignorant of that fact. *See, e.g.*, *Timpa*, 20 F.4th at 1031.