UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MALIKAH ASANTE-CHIOKE | CIVIL ACTION |
| VERSUS | NO. 22-4587 |
| NICHOLAS DOWDLE ET AL. | SECTION: "J"(3) |

## ORDER AND REASONS

Before the Court are two motions: the first, a *Motion in Limine to Strike Certain Expert Opinions, Testimony, and Documents* **(Rec. Doc. 197)** filed by Defendants Col. Lamar A. Davis and Nicholas Dowdle ("LSP Defendants"); the second, a *Motion to Exclude Plaintiff's Expert Cole Young* **(Rec. Doc. 200)** filed by Defendants Officers Johnathan Downing, Gerard Duplessis, and Terry Durnin ("EJLD Defendants"). Plaintiff filed oppositions to both motions. (Rec. Doc. 215; Rec. Doc. 220). LSP Defendants filed a reply. (Rec. Doc. 228). Having considered the motions and memoranda, the record, and the applicable law, the Court finds that LSP Defendants' motion is **GRANTED** in part and **DENIED** in part, and that EJLD Defendants' motion is **DENIED**.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the

1

principles and methods employed by the expert have been reliably applied to the facts of the case. Fed. R. Evid. 702. The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702.

Both scientific and nonscientific expert testimony are subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998).

To be reliable, expert testimony must be based on "scientific knowledge," meaning it must be "ground[ed] in the methods and procedures of science" and based on "more than subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 589-90. However, this rule does not require the testimony to be based on a scientific study, but allows testimony based on "personal experience" if, in the trial court's view, there is a sufficient level of "intellectual rigor" underlying the testimony. *Kumho Tire Co.*, 526 U.S. at 152. Indeed, "reliance upon extensive personal experience or specialized knowledge is an acceptable ground for the

admission of expert testimony." *Derouen v. Hercules Liftboat Co., LLC*, No. CV 13-4805, 2015 WL 13528499, at *3 (E.D. La. Sept. 4, 2015).

A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has considerable leeway in determining how to test an expert's reliability.").

With respect to the relevancy prong, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Ultimately, a court should not allow its "gatekeeper" role to supersede the traditional adversary system, or the jury's place within that system. *Scordill v. Louisville Ladder Grp., LLC*, No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003). As the Supreme Court noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Generally, questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

**PARTIES' ARGUMENTS AND DISCUSSION**

EJLD Defendants request that this Court exclude Cole Young as an expert, along with all of his testimony and opinions. (Rec. Doc. 200). Taking a more targeted approach, LSP Defendants request that this Court exclude the following:

1. Cole Young's testimony and opinion as to any visual depictions of video;
2. Cole Young's "Stabilized Video" created from Nicholas Dowdle's bodycam footage;
3. Graphics contained in Exhibit 10 from the deposition of Thomas Martin created by Cole Young; and
4. The DOJ investigation document attached to the deposition of Mark Candies as Exhibit 11 (Rec. Doc. 197).

## I.     Expert Testimony Admissibility

As an initial matter, this Court rejects EJLD Defendants' argument that all expert testimony is inadmissible at this stage of litigation. EJLD Defendants cite no case which blanketly prohibits expert testimony in the qualified immunity context. To the contrary, courts in this circuit routinely utilize expert testimony to determine whether an officer is entitled to qualified immunity in excessive force cases. *Ambler v. Nissen*, 116 F. 4th 351, 362 (5th Cir. 2024) (affirming denial of qualified immunity because expert testimony helped raise a genuine dispute of material fact as to whether an officer used excessive force); *Roque v. Harvel*, 993 F. 3d 325, 333-34 (5th

Cir. 2021) (considering expert evidence in determining that there was a genuine dispute of material fact as to whether officer used excessive deadly force when continuing to shoot individual). Accordingly, this Court will determine whether each expert's testimony is admissible on a case-by-case basis.

## II.    Cole Young's Visual Depictions of Videos

Defendants seek to exclude any testimony or opinions from Mr. Young concerning what the bodycam footage visually depicts. (Rec. Doc. 197-2, at 4; Rec. Doc. 200-1, at 6). LSP Defendants contend that, in his expert report, Mr. Young observes the footage and describes each position that Mr. Asante-Chioke is in from the initial to the final discharge. (Rec. Doc. 197-2, at 6) (quoting (Rec. Doc. 197-3, at 20)). Specifically, LSP Defendants note that Mr. Young describes, down to the one-hundredth of a second, when Mr. Asante-Chioke dropped the gun, fell, and turned his back to Trooper Dowdle. *Id.* LSP Defendants also seek to exclude the portion of Table 1 of Mr. Young's report where he describes Mr. Asante Chioke's posture during the shooting and Section 6.0 where Mr. Young presents his conclusions. *Id.* at 7 (citing (Rec. Doc. 197-3, at 10)). Defendants argue that Mr. Young's descriptions are inadmissible because he is no better suited than the factfinder to interpret the video and determine Mr. Chioke's posture. *Id.* at 5; (Rec. Doc. 200-1, at 6).

Plaintiff argues that Mr. Young does not merely observe the video evidence, but instead relies on his expertise to conduct a technical analysis of the video's audible and visual elements. (Rec. Doc. 215, at 4; Rec. Doc. 220, at 3). Plaintiff notes that Mr. Young uses forensic technology to "assess the weapon discharge timeline,

measure the relative positions of Mr. Asante-Chioke and the officers involved, and reconstruct the posture of Mr. Asante-Chioke immediately preceding and during the weapon discharge." *Id.* at 5 (quoting (Rec. Doc. 197-3, at 5)). Plaintiff also argues that Mr. Young analyzes video details that are unascertainable by a layperson, such as "recoil angles in the shadow of Shooting Defendant Dowdle's firearm and the gas discharge clouds following each shot." *Id.* at 6. Plaintiff contends that such an analysis cannot be conducted by a layperson and will help the factfinder determine whether the officers are entitled to qualified immunity. *Id.* at 7.

   *A. Cole Young's "Visual Observations"*

   Section 4.1 of Mr. Young's report is entitled "Video Observations and Weapon Discharge Timeline." (Rec. Doc. 197-3, at 5). In the first two paragraphs of this section, Mr. Young describes the events leading up to the shooting. *Id.* at 5. Mr. Young's descriptions of the events leading up to the shooting are irrelevant to the issue of whether Officer Dowdle's actions to continue firing were reasonable. Accordingly, the Court will exclude these descriptions from Mr. Young's report.

   *B. Cole Young's Analysis and Conclusions*

   In the remainder of Section 4.1, Mr. Young explains his observations and analysis of events during the shooting and illustrates his findings in Table 1 of his report. *Id.* at 6-10. In Section 6.0, Mr. Young presents his conclusions. *Id.* at 20.

   This Court will not exclude the remaining information in these sections. An expert may testify if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

*Moore v. Ashland Chemical*, Inc., 151 F. 3d 269, 275 (5th Cir. 1998) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-90 (1993)).  Here Mr. Young used special forensic software to inspect frame timing and synchronize several videos of the incident. (Rec. Doc. 197-3, at 5). Relying on this software and his expertise, Mr. Young analyzed video details beyond the capability of a layperson, such as the recoil angles in the shadow of Officer Dowdle's firearm and the gas discharge clouds following each shot. *Id.* at 8. He then used that information in conjunction with an analysis of the positions of all three shooting officers and the position of Mr. Asante-Chioke to opine on Mr. Asante-Chioke's posture during the 4.2-second shooting to the one-hundredth of a second. *Id.* at 10, 20.  By analyzing these intricate details and presenting his findings, Mr. Young provides insight into Mr. Asante-Chioke's posture during the shooting that may help the factfinder determine whether Officer Dowdle's actions were reasonable. Accordingly, this Court will not exclude the remaining information contained in Section 4.1 or Section 6.0 of Mr. Young's report.

### III.    Cole Young's "Stabilized Video"

LSP Defendants also seek to exclude a "stabilized video from Trooper Dowdle's [bodycam] video from 2 seconds prior until 5 seconds after the first discharge," along with a PDF of the video's frames (Rec. Doc. 197-2, at 8). LSP Defendants contend that the stabilized video should be excluded under Federal Rule of Evidence 403 because it zooms in on Mr. Asante-Chioke, removes Trooper Dowdle's perspective and movements, and offers nothing that the original video does not offer (Rec. Doc. 197-

7

2, at 10–11). EJLD Defendants also seek to exclude the stabilized video for similar reasons. (Rec. Doc. 200-1, at 7).

Plaintiff argues that the stabilized video would not prejudice LSP Defendants because it does not replace Officer Dowdle's original bodycam footage, and the factfinder can view the stabilized video alongside the original. (Rec. Doc. 215, at 11). Plaintiff argues that the stabilized video and PDF images will help the factfinder analyze the shooting evidence. *Id.*

Plaintiff's argument has merit. Defendants offer no authority to support their argument that the stabilized video is prejudicial or that it lacks probative value. Further, many courts have allowed enhanced video to be compared alongside the original. *United States v. Harris*, No. 20-cr-21, 2022 WL 1642498, at *7 (D. Colo. May 24, 2022) (holding that an enhanced video was not excludable under Rule 403 because "the jury will be able to compare the original videos to the enhanced videos to determine which are more reliable"); *United States v. Seifert*, 445 F. 3d 1043, 1045–46 (8th Cir. 2006) (admitting video that "brightened the image of the suspect and the surrounding area"); *see also Murphy v. Airway Air Charter, Inc.*, No. 23-cv-23654, 2025 WL 671342, at *6 (S.D. Fla. Mar. 3, 2025) (holding that a zoomed-in video did not prejudice defendant's case because "Plaintiff could have still relied on the original videos to prove his case.") The stabilized video will help the factfinder view Mr. Asante-Chioke's movements during the 4.2-second shooting. Mr. Asante-Chioke's movements are critical to determine whether the officers' actions to continue shooting were reasonable. Any prejudice caused by the stabilized video will not substantially

outweigh its probative value because the factfinder can compare the original to the stabilized video. The factfinder can determine for themselves the weight, if any, they choose to give to the stabilized video and PDF images. Thus, this Court will not exclude the stabilized video or its PDF frames.

### IV.    Exhibits 10 and 11

LSP Defendants also seek to exclude two exhibits presented by Plaintiff during separate depositions of LSP Defendants' experts: the first, graphics allegedly created by Mr. Young; the second, a document detailing an investigation of the Louisiana State Police by the Department of Justice's Civil Rights Division ("DOJ Report"). (Rec. Doc. 197-2, at 13–14). LSP Defendants argue that both exhibits should be stricken because they were not disclosed by Plaintiff prior to the deposition. *Id.*

Plaintiff argues that she did not have to disclose the exhibits because Rule 26(a)(2) of the Federal Rules of Civil Procedure only requires disclosure of exhibits used by the expert to support his or her opinions. (Rec. Doc. 215, at 12). Plaintiff contends that the exhibits were only offered to help Plaintiff's counsel confront LSP Defendants' experts' opinions. *Id.* Thus, Plaintiff argues they were not required to disclose the exhibits to opposing counsel prior to the depositions. *Id.*

Plaintiff's argument has merit. LSP Defendants offer no rule or legal authority which require an opposing party to produce exhibits that will not be used by an expert to support his or her opinions. An expert need only produce "any exhibits that will be used to summarize or support" "all the opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Neither exhibit was used by

Plaintiff's experts to form their opinions. Therefore, the Court will not strike the exhibits on those grounds.

LSP Defendants also argue that the DOJ Report should be stricken as irrelevant because it does not specifically reference Mr. Asante Chioke's shooting. (Rec. Doc. 197-2, at 14).

Conversely, Plaintiff argues that the DOJ Report is relevant because, though it does not expressly mention Mr. Asante Chioke's shooting, the DOJ report "provides factual findings about the Louisiana State Police's use of excessive force" during the time period of Mr. Asante Chioke's shooting. (Rec. Doc. 215, at 15). Plaintiff argues that the DOJ Report is relevant to assess Officer Dowdle's use of deadly force during the shooting and assess LSP Defendants' expert Mark Candies' credibility. *Id.* at 16.

The Court agrees with Plaintiff. In the DOJ Report, the investigators explain that they "reviewed every LSP shooting and hundreds of other randomly selected force incidents from 2018 to 2023." U.S. Dep't of Justice, Civil Rights Div'n, *Findings Report — Investigation of the Louisiana State Police* at 6 (Jan. 16, 2025) https://www.justice.gov/crt/media/1384626/dl (last visited October 22, 2025). A report which reviewed every LSP shooting during the time period of Mr. Asante-Chioke's shooting to determine whether the Louisiana State Police used excessive force is relevant to determine whether Officer Dowdle, a Louisiana State Police officer, used excessive force when continuously shooting Mr. Asante Chioke. The DOJ Report does not need to specifically mention the incident to be relevant to the underlying issue. *See Stewart v. Loftin*, No. 3:21-CV-03789, 2025 WL 1121881, at *6 (W.D. La. Mar. 14,

2025) (finding this exact report to be relevant to determine whether plaintiff's claim that LSP officers used excessive force against him would survive a 12(b)(6) Motion to Dismiss even though the report did not specially mention plaintiff's incident at issue). Accordingly, this Court finds the DOJ Report to be relevant to the instant case.

Lastly, LSP Defendants argue that the DOJ Report should be excluded because it was withdrawn. (Rec. Doc. 197-2, at 14). LSP Defendants argue that the DOJ Report cannot be used because it relies on retracted U.S. DOJ positions. *Id.* at 15. Even if it could be used, LSP Defendants argue that the retracted DOJ Report should be excluded because the prejudice from the DOJ Report outweighs its probative value. *Id.*

Plaintiff argues that the DOJ Report was not withdrawn. (Rec. Doc. 215, at 16). Plaintiff notes that the DOJ Report is still publicly available on the DOJ's website. *Id.* Plaintiff also contends that, even if the DOJ Report was withdrawn, it would not alter the relevancy of the Report's factual findings. *Id.* Plaintiff also argues that LSP Defendants do not adequately explain why the DOJ Report is unfairly prejudicial. *Id.*

Plaintiff's argument has merit. While the DOJ did withdraw their investigations and findings concerning the Louisiana State Police, they did not withdraw the DOJ Report, which is still publicly available on the DOJ's website. U.S. Dep't of Justice, Civil Rights Div'n, *Findings Report — Investigation of the Louisiana State Police* (Jan. 16, 2025), https://www.justice.gov/crt/media/1384626/dl (last visited October 22, 2025). Even if the DOJ Report had been withdrawn, its factual

findings are still relevant to the excessive force issue of the instant case. LSP Defendants offer no authority or detailed argument explaining why the DOJ Report will be unfairly prejudicial. The factfinder can decide what weight, if any, they want to give to the DOJ Report. Accordingly, this Court will not exclude the DOJ Report.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that LSP Defendants' motion **(Rec. Doc. 197)** is **GRANTED** in part and **DENIED** in part as follows. Mr. Young will be allowed to testify as an expert in this case, but he will not be able to opine on the events leading up to the shooting. The remainder of Mr. Young's report and testimony is admissible.

**IT IS FURTHER ORDERED** that EJLD Defendants' motion **(Rec. Doc. 200)** is **DENIED.**

New Orleans, Louisiana, this 22nd day of October, 2025.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE