UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MALIKAH ASANTE-CHIOKE                          CIVIL ACTION

VERSUS                                                   NO. 22-4587

NICHOLAS DOWDLE ET AL.                       SECTION: "J"(3)

## ORDER & REASONS

Before the Court are two motions: the first, a *Motion to Exclude Plaintiff's Expert John C. Gardiner* **(Rec. Doc. 198)** filed by Defendants Officers Johnathan Downing, Gerard Duplessis, and Terry Durnin ("EJLD Defendants"); the second, a *Motion to Exclude the Testimony and Opinions of Dr. John Gardiner* **(Rec. Doc. 199)** filed by Defendants Col. Lamar A. Davis and Nicholas Dowdle ("LSP Defendants"). Plaintiff filed an opposition to both motions. (Rec. Doc. 220). LSP Defendants filed a reply. (Rec. Doc. 227). Having considered the motions and memoranda, the record, and the applicable law, the Court finds that LSP Defendants' motion is **GRANTED** in part and **DENIED** in part, and that EJLD Defendants' motion is **DENIED**.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the

principles and methods employed by the expert have been reliably applied to the facts of the case. Fed. R. Evid. 702. The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702.

Both scientific and nonscientific expert testimony are subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998).

To be reliable, expert testimony must be based on "scientific knowledge," meaning it must be "ground[ed] in the methods and procedures of science" and based on "more than subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 589-90. However, this rule does not require the testimony to be based on a scientific study, but allows testimony based on "personal experience" if, in the trial court's view, there is a sufficient level of "intellectual rigor" underlying the testimony. *Kumho Tire Co.*, 526 U.S. at 152. Indeed, "reliance upon extensive personal experience or specialized knowledge is an acceptable ground for the

admission of expert testimony." *Derouen v. Hercules Liftboat Co., LLC*, No. CV 13-4805, 2015 WL 13528499, at *3 (E.D. La. Sept. 4, 2015).

A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has considerable leeway in determining how to test an expert's reliability.").

With respect to the relevancy prong, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Ultimately, a court should not allow its "gatekeeper" role to supersede the traditional adversary system, or the jury's place within that system. *Scordill v. Louisville Ladder Grp., LLC*, No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003). As the Supreme Court noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Generally, questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

<u>**PARTIES' ARGUMENTS AND DISCUSSION**</u>

LSP Defendants argue that the Court should exclude Dr. Gardiner, along with his testimony and opinions, because he is unqualified, his methodology is unreliable, and his testimony is irrelevant. (Rec. Doc. 199-2, at 3).

EJLD Defendants make similar arguments, but they also argue that Dr. Gardiner's testimony will not help the factfinder. (Rec. Doc. 198-1, at 6).

## I.    Dr. Gardiner's Qualifications

LSP Defendants argue that Dr. Gardiner is unqualified to opine on the likely source of the shots fired because, apart from his expert reviews, he lacks specific training, education, or experience analyzing bullet trajectory "based on gunshot wounds." (Rec. Doc. 199-2, at 6).

Plaintiff argues that Dr. Gardiner does have specific training and experience to opine on the source of the bullet wounds because he has testified "about gunshot sequences and attribution to specific shooters in federal court" and has conducted "biomechanical analyses in '50 different cases' involving gunshot wounds." (Rec. Doc. 220, at 18 (citing Rec. Doc. 220-3, at 14–5)). Further, Plaintiff argues that Dr. Gardiner is qualified to testify here because many courts have held that

4

biomechanical engineers, including Dr. Gardiner, may rely on their technical expertise to opine on gunshot attribution and sequencing without specific training, education, or expertise in bullet trajectory analysis. (Rec. Doc. 220, at 17–8).

This Court agrees with Plaintiff. Dr. Gardiner holds a Bachelor of Science in Mechanical Engineering and a Doctor of Philosophy in Bioengineering. (Rec. Doc. 198-3, at 4). He is a Senior Biomechanical Engineer who conducts "biomechanical analysis of a variety of events including . . . shootings." *Id.* He estimates that he has performed biomechanical analyses in "50 different cases involving" gunshot wounds. (Rec. Doc. 198-5, at 5). LSP Defendants offer no authority which requires Senior Biomechanical Engineers to have specific training, experience, or education in bullet trajectory analysis to opine on the source of each bullet wound. Further, courts have allowed biomechanical engineers, including Dr. Gardiner, to opine on the source of wounds in a shooting. *Zuniga v. City of Los Angeles*, No. 22-cv-3665, 2024 WL 4738212, at *2 (C.D. Cal. Sept. 18, 2024) (finding that Dr. Gardiner was qualified to opine on which officer fired a bean bag round at plaintiff); *Rodriguez v. Hunt et al.*, No. 18-cv-1640, 2025 WL 2648277, at *2 (D. Or. Sept. 16, 2025) (finding that a biomechanical engineer was "qualified to testify on questions of biomechanical engineering, including shooting reconstructions"). Accordingly, the Court finds that Dr. Gardiner is qualified to opine on the likely source of Mr. Asante-Chioke's gunshot wounds.

## II.     Reliability of Dr. Gardiner's Methodology

LSP Defendants also argue that Dr. Gardiner's methodology is unreliable because he did not calculate or quantify the officers' exact shooting angles. (Rec. Doc. 199-2, at 7). LSP Defendants contend that Dr. Gardiner merely "eyeballed" the body camera footage to determine the source of each bullet wound. *Id.* at 9. According to LSP Defendants, Dr. Gardiner must provide specific calculations or quantifications of the shooting angles to have a reliable methodology. *Id.* at 7.

In contrast, Plaintiff contends that Dr. Gardiner did not merely "eyeball" the footage and instead considered "the relative positions of each of the three officers to Mr. Asante-Chioke, the gunshot wound entrances and exits, the gunshot wound trajectories, and the anatomical postures and positions of Mr. Asante-Chioke during the shooting incident." (Rec. Doc. 220, at 20 (citing (Rec. Doc. 220-1, at 31))). Plaintiff argues that these considerations are sufficient and that LSP Defendants cite no authority which requires Dr. Gardiner to conduct a more rigorous analysis for his methodology to be reliable.

This Court agrees with Plaintiff. LSP Defendants offer no authority which requires an expert to quantify or calculate exact shooting angles to opine on shooting source and position. Further, courts have found an expert's methodology to be reliable when those experts analyzed similar factors to the ones Dr. Gardiner analyzed in his report. *Davies v. City of Lakewood*, No. 14-cv-1285, 2016 WL 614434, at *9 (D. Colo. Feb. 16, 2016) (finding expert's methodology reliable when that expert performed "bullet trajectory analyses" and analyzed "various positions and poses of [shooting

officer and decedent]" and "conduct[ed] bio-mechanical studies of potential movements and poses to eliminate those which were unlikely"); *Baker v. Coborn*, 773 F. Supp. 3d 300, at 315 (N.D. Tex. 2025) (finding expert's methodology reliable when that expert "emphasized the relative firing positions and location of the [shooting officers] in relation to the [decedent] as they shot at him"). Accordingly, this Court does not find Dr. Gardiner's methodology to be unreliable on those grounds.

LSP Defendants also argue that Dr. Gardiner's methodology is unreliable due to alleged inconsistencies and contradictions concerning the timing of certain wound in his report termed as Gunshot Wounds #14 and #15 and his conclusions concerning how many gunshot wounds were consistent with coming from Officer Dowdle during the final 1.1 seconds of the shooting. (Rec. Doc. 199-2, at 9–14). However, as Plaintiff correctly points out, LSP Defendants primarily dispute Dr. Gardiner's conclusions, not his methodology. Challenges to Dr. Gardiner's conclusions are more appropriately addressed at trial then at this stage of the litigation. As the Supreme Court has explained, in reviewing pretrial challenges to expert testimony, this Court's "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 595 (1993). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. Thus, this Court will not exclude Dr. Gardiner's testimony as unreliable based on these challenges.

### III.   Relevance of Dr. Gardiner's Opinions

Defendants argue that Dr. Gardiner's opinions are irrelevant to the issue of qualified immunity at this stage of the litigation. (Rec. Doc. 199-2, at 14; Rec. Doc. 198-1, at 6). LSP Defendants also suggest that Dr. Gardiner opines on ultimate causation and damage issues regarding Gunshot Wound #15. (Rec. Doc. 199-2, at 14).

Plaintiff argues that Dr. Gardiner's opinions are relevant to the issue of qualified immunity because Dr. Gardiner opines on which shots Officer Dowdle likely fired and the time that he likely fired them. (Rec. Doc. 220, at 15). Plaintiff also contends that Dr. Gardiner's opinions do not involve ultimate causation and damage issues. *Id.*

This Court finds that most of Dr. Gardiner's opinion is relevant. In his report, Dr. Gardiner opines on the likely source of Mr. Asante-Chioke's bullet wounds and when the shooting officers, including Officer Dowdle, likely fired them. (Rec. Doc. 198-3, at 33, 42). Such opinions are relevant to the pertinent qualified immunity issues of "whether Dowdle fired any shots; how many if so; and when, in relation to Asante-Chioke's actions and death." *Asante-Chioke v. Dowdle*, 103 F.4th 1126, 1131 (5th Cir. 2024). Further, at least one court has found a similar expert opinion relevant to the issue of qualified immunity in excessive force cases. *Cole v. Hunter*, 68 F. Supp. 3d 628, 636 (N.D. Tex. 2014) (finding expert's opinions on the "timing and sequence of the gunshot wounds" relevant to whether shooting officers were entitled to qualified immunity from excessive force claim). Accordingly, this Court will not exclude these opinions on relevance grounds.

Still, in his report Dr. Gardiner also references Chief Forensic Pathologist Dr. Dana Troxclair's conclusion that the "bullet causing Wound #15 killed Mr. Asante-Chioke." (Rec. Doc. 198-3, at 14). Opinions and references thereto concerning which bullet killed Mr. Asante-Chioke are irrelevant to the limited issue of whether the shooting officers are entitled to qualified immunity when they continued to fire upon him. Accordingly, the Court will exclude such opinions and references from Dr. Gardiner's report.

## IV.    Helpfulness of Dr. Gardiner's Opinions

EJLD Defendants also argue that Dr. Gardiner's testimony will not assist the factfinder because video captures the incident. (Rec. Doc. 198-1, at 6–7). EJLD Defendants cite two cases to support their assertion. *Id.* (citing *Carnaby v. City of Houston*, 636 F. 3d 183, 187 (5th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

Plaintiff argues that neither of EJLD Defendants' cited cases mention the use of experts or hold that experts cannot assist the factfinder in interpreting facts depicted on video.

This Court agrees with Plaintiff. Neither *Carnaby* nor *Scott* addressed whether the presence of video evidence renders expert testimony unhelpful. *Carnaby* only discussed video evidence to articulate the legal standard by which the Fifth Circuit reviews motions for summary judgement when video evidence exists: "Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight . . . to the facts evident from video recordings taken at the scene." *Carnaby*,

636 F. 3d at 187. In *Scott*, the Supreme Court only explained that the Eleventh Circuit should have viewed the facts in the light depicted by the video tape because plaintiff's version of events was "so utterly discredited by the record that no reasonable jury could have believed him." *Scott*, 550 U.S. at 380–81. No expert testimony was challenged or mentioned.

By opining on the likely source and timing of each gunshot wound, Dr. Gardiner will help the factfinder determine whether each of the shooting officers acted unreasonably when they continued to fire upon Mr. Asante-Chioke. Therefore, this Court will not exclude Dr. Gardiner's testimony as unhelpful.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that LSP Defendants' motion **(Rec. Doc. 199)** is **GRANTED** in part and **DENIED** in part as follows. Dr. Gardiner will be allowed to testify as an expert in this case, but he will not be able to opine or reference opinions on which wound likely killed Mr. Asante-Chioke. The remainder of Dr. Gardiner's report and testimony is admissible.

**IT IS FURTHER ORDERED** that EJLD Defendants' motion **(Rec. Doc. 198)** is **DENIED.**

New Orleans, Louisiana, this 12th day of November, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE