UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MALIKAH ASANTE-CHIOKE                    CIVIL ACTION

VERSUS                                   NO. 22-4587

NICHOLAS DOWDLE ET AL.                   SECTION: "J"(3)

### ORDER & REASONS

Before the Court is a *Motion to Exclude the Testimony of John J. Ryan* **(Rec. Doc. 206)** filed by Plaintiff Malikah Asante-Chioke. Defendants Officers Johnathon Downing, Gerard Duplessis, and Terry Durnin (collectively "EJLD Defendants") filed an opposition to the motion. (Rec. Doc. 216). Plaintiff filed a reply. (Rec. Doc. 234). Having considered the motion, the legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**.

### LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the principles and methods employed by the expert have been reliably applied to the facts of the case. Fed. R. Evid. 702. The United States Supreme Court's decision in *Daubert*

1

*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702.

Both scientific and nonscientific expert testimony are subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998).

To be reliable, expert testimony must be based on "scientific knowledge," meaning it must be "ground[ed] in the methods and procedures of science" and based on "more than subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 589-90. However, this rule does not require the testimony to be based on a scientific study, but allows testimony based on "personal experience" if, in the trial court's view, there is a sufficient level of "intellectual rigor" underlying the testimony. *Kumho Tire Co.*, 526 U.S. at 152. Indeed, "reliance upon extensive personal experience or specialized knowledge is an acceptable ground for the admission of expert testimony." *Derouen v. Hercules Liftboat Co., LLC*, No. CV 13-4805, 2015 WL 13528499, at *3 (E.D. La. Sept. 4, 2015).

A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has considerable leeway in determining how to test an expert's reliability.").

With respect to the relevancy prong, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Ultimately, a court should not allow its "gatekeeper" role to supersede the traditional adversary system, or the jury's place within that system. *Scordill v. Louisville Ladder Grp., LLC*, No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003). As the Supreme Court noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Generally, questions relating to the basis and

sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

## PARTIES' ARGUMENTS AND DISCUSSION

Plaintiff argues that the Court should limit Mr. Ryan's opinions regarding the following: "impermissible legal conclusions," "Defendants' perception and reaction times when assessing a threat," and his opinions that "subjectively interpret Defendants' version of events." (Rec. Doc. 206-1 at 6).

### I.   Legal Conclusions

Plaintiff argues that Mr. Ryan offers impermissible legal conclusions which this Court should exclude. *Id.* Specifically, Plaintiff seeks to exclude Mr. Ryan's statement in his report which provides, "It is well known that [if] [sic] an officer reasonably perceives an immediate threat of serious bodily harm or death against themselves, another officer, or any third party, the officer may respond with deadly force." (Rec. Doc. 206-4 ¶ 339). Plaintiff notes that another court has excluded this exact statement by Mr. Ryan in a different report. (Rec. Doc. 206-1, at 7 (citing *Sterusky v. Cooper*, No. 22-cv-218, 2024 WL 4009668, at *7 (W.D. Ky. Aug. 30, 2024))).

EJLD Defendants argue that a full reading of Mr. Ryan's opinion will explain how this statement is based on Mr. Ryan's "expertise in generally accepted [police] policies, practices, training, and industry standards." (Rec. Doc. 216, at 8).

While that may be the case, Mr. Ryan's statement is not couched in the appropriate terms. In *Sterusky*, the court excluded this exact statement because it

4

was "not couched in terms of police practices or training and, even if not intended as such, constitutes a statement of law." *Sterusky v. Cooper*, No. 22-cv-218, 2024 WL 4009668, at *7 (W.D. Ky. Aug. 30, 2024).

Experts may not provide legal standards because that job is reserved for the Court. "There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase v. Fatjo*, 130 F. 3d 657, 673 (5th Cir. 1997) (quoting *Specht v. Jenson*, 853 F. 2d 805, 807 (10th Cir. 1988)). Accordingly, the Court will exclude Mr. Ryan's statement.

Plaintiff also argues that Mr. Ryan impermissibly opines on the standards set forth in *Graham v. Connor*, 490 U. S. 386 (1989), applies those standards, and concludes as to the reasonableness of Defendants' actions using those standards. (Rec. Doc. 206-1, at 8).

EJLD Defendants argue that the applicable police standards and practices in this case parallel the mandates of *Graham v. Connor*. (Rec. Doc. 216, at 8–9). Thus, EJLD Defendants contend that, while it may appear that Mr. Ryan is stating and applying *Graham v. Connor*, he is stating and applying the relevant police standards and practices of the instant case and determining whether the Defendants' actions comported with those standards and practices. *Id.* at 9.

This Court agrees with EJLD Defendants. In his report Mr. Ryan states

> Officers throughout the United States are trained in two formulas with respect to use of force decision-making and justification. The first of these formulas is a three-part test that parallels the mandates announced by the United States Supreme Court in *Graham v. Connor*. The training directs officers to consider the seriousness of the offense; whether or not the subject poses an immediate physical threat to the

5

>officer or anyone else; and finally, whether the subject is actively resisting or attempting to evade arrest by flight. I would note that in writing policies for law enforcement agencies throughout the United States, I use this three-factor test as the foundation of these policies. I have noted in my auditing of law enforcement agencies as well as through discussions during training, that the majority of agencies in the United States use the three-factor test in policy and training. (Rec. Doc. 206-4 ¶ 331).

Mr. Ryan then applies these police standards and practices to this case to determine that Officers Duplessis and Downing's use of deadly force complied with those standards. As this Court has explained, an expert may opine on whether officers complied with applicable police policies and procedures. *Gibbs v. Lopinto*, No. 21-1091, 2023 WL 3224581, at *3 (E.D. La. May 3, 2023) "Expert testimony regarding [police] policies and procedures, and [officers'] compliance with those policies and procedures, is admissible." *Id.* (citing *United States v. Warren*, No. 10-154, 2010 WL 11623588, at *4 (E.D. La. Nov. 8, 2010)). The Court will not exclude Mr. Ryan's statements of applicable police standards and practices, nor his conclusion that Officers Downing and Duplessis complied with those standards.

Plaintiff also suggests that Mr. Ryan needed to opine on relevant policies and procedures of the East Jefferson Levy District for his opinion to be admissible. (Rec. Doc. 206-1, at 9). Plaintiff argues that *Joseph v. Doe*, No. 17-5051, 2021 WL 2313475 (E.D. La. June 7, 2021) requires discussion of local police policies and standards. *Id.*

EJLD Defendants argue that Mr. Ryan does not need to discuss relevant East Jefferson Levee District policies and procedures (Rec. Doc. 216, at 11), and this Court agrees. In *Joseph*, the court did not hold that a use of force expert must opine on relevant local police policies and procedures for their testimony to be admissible.

6

Further, Plaintiff fails to cite any authority which provides that adherence to local police policies and procedures informs the constitutionality of an officer's use of force. To the contrary, the Eighth Circuit provides that "the constitution doesn't rise and fall with the whims of each police department's policies." *Christiansen v. Eral*, 52 F.4th 377, 379 (8th Cir. 2022) (explaining that just because an officer "chose to violate department policy doesn't mean that he acted unreasonably from a constitutional perspective"). Accordingly, the Court will not reject Mr. Ryan's testimony simply because he failed to discuss the policies and procedures of the East Jefferson Levy District.

Lastly, Plaintiff argues that Mr. Ryan offers impermissible legal opinions because he opines that the EJLD Defendants acted reasonably. (Rec. Doc. 206-1, at 4). While reasonableness is an inadmissible legal conclusion, Plaintiff fails to offer specific examples from Mr. Ryan's report where he opines on the reasonableness of the EJLD Defendants' actions. However, if Mr. Ryan attempts to testify at trial on the reasonableness of the EJLD Defendant's actions, the Court will exclude such testimony.

## II. The "Reactionary Gap"

Plaintiff also argues that Mr. Ryan is unqualified to opine on the "reactionary gap" between when an officer receives a stimulus to stop or start firing and when an officer responds to said stimulus. (Rec. Doc. 206-1, at 12). Plaintiff argues Mr. Ryan is unqualified because he lacks field training in this area. *Id.* EJLD Defendants argue that Mr. Ryan is qualified to opine on reaction time because he has spent numerous

7

hours training officers in shooting scenarios, including conducting stimulus drills on a shooting range.

This Court agrees with EJLD Defendants. As Mr. Ryan explains in his report, when training officers, he has "conducted stimulus drills on the range whereby officers are given stimulus to commence firing and stimulus to cease firing" to evaluate each shooting officer's reactionary gap. (Rec. Doc. 206-4 ¶ 340). As another court has noted, Mr. Ryan has conducted such reaction training over 100 times. *Estate of Smart v. Chaffee*, No. 14-2111, 2020 WL 7643505, at *13 (D. Kan. Dec. 23, 2020) (finding Mr. Ryan qualified to opine on the reactionary gap because "[i]n training police officers nationwide, Mr. Ryan has conducted reaction-time firearms training more than 100 times. This training sometimes involved asking police officers to stop shooting at a target when a simulated threat was removed, such as the target being turned sideways to the shooting officer.") Accordingly, this Court finds Mr. Ryan qualified to opine on the reactionary gap.

Plaintiff also argues that, even if Mr. Ryan were qualified, his opinions on the reactionary gap will not help the factfinder because perception reaction times are common sense. (Rec. Doc. 206-1, at 13). However, this Court disagrees. While a lay person may have a general understanding of perception reaction times, "[a] lay person typically would not have experience or knowledge about the time it takes an officer to react to a perceived threat or the absence of a perceived threat." *Estate of Smart v. Chaffee*, No. 14-2111, 2020 WL 7643505, at *14 (D. Kan. Dec. 23, 2020). By opining that shooting officers take time to react to a stimulus to stop shooting, Mr. Ryan may

8

help the factfinder determine whether the Defendants officers' actions to continue shooting Mr. Asante-Chioke were reasonable. Consequently, this Court will not exclude Mr. Ryan's testimony as unhelpful.

### III. Mr. Ryan's Factual Interpretations

Plaintiff also argues that this Court should exclude "Mr. Ryan's opinions that merely recite defense counsel's factual and legal narratives." (Rec. Doc. 206-1, at 14). EJLD Defendants argue that Mr. Ryan's opinions are not based on defense counsel's factual and legal narratives, but instead are based on his view of the body cam, dash cam, and bystander video evidence. (Rec. Doc. 216, at 12).

This Court agrees with EJLD Defendants. As Mr. Ryan explains, "[m]y methodology in preparing a report includes a review of all provided documents, testimony, reports, statements, audio and video and developing a sense of the underlying facts as reported by all parties and witnesses without making credibility determinations with respect to statements and testimony." (Rec. Doc. 206-4 ¶ 17). Throughout his report, Mr. Ryan utilizes the available video evidence and deposition testimony to formulate his opinions. (Rec. Doc. 206-4 ¶¶ 330, 333). If Plaintiff believes that Mr. Ryan is relying on EJLD Defendants' version of events, Plaintiff is free to challenge Mr. Ryan at trial. *Sterusky v. Cooper*, No. 22-cv-218, 2024 WL 4009668, at *7 (W.D. Ky. Aug. 30, 2024) (rejecting a similar argument made by Plaintiff and explaining that "[l]egal actions that go to trial contain contested issues of fact, and Plaintiff's assertion that Ryan has adopted [defendant]'s testimony is not grounds for exclusion. Plaintiff will have the opportunity to cross-examine Ryan on the bases for

9

his opinions.") The Court rejects Plaintiff's argument at this stage of the litigation. Therefore, the Court will not exclude Mr. Ryan's opinions on those grounds.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion is **GRANTED in part** and **DENIED in part** as follows.

Mr. Ryan may testify as an expert in this case, but he will not be able to provide statements not appropriately couched in terms of applicable police policies and procedures. The remainder of Mr. Ryan's report and testimony is admissible.

New Orleans, Louisiana, this 21st day of November, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE