UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MALIKAH ASANTE-CHIOKE | CIVIL ACTION |
| VERSUS | NO. 22-4587 |
| NICHOLAS DOWDLE ET AL. | SECTION: "J"(3) |

### ORDER & REASONS

Before the Court is a *Motion to Exclude the Testimony of Mark Candies* **(Rec. Doc. 204)** filed by Plaintiff Malikah Asante-Chioke. Defendants Officers Lamar Davis and Nicholas Dowdle (LSP Defendants) filed an opposition. (Rec. Doc. 217) Plaintiff filed a reply. (Rec. Doc. 231). Having considered the motions and memoranda, the record, and the applicable law, the Court finds that Plaintiff's motion should be **GRANTED in part** and **DENIED in part**.

### LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the principles and methods employed by the expert have been reliably applied to the facts of the case. Fed. R. Evid. 702. The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702.

1

Both scientific and nonscientific expert testimony are subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998).

To be reliable, expert testimony must be based on "scientific knowledge," meaning it must be "ground[ed] in the methods and procedures of science" and based on "more than subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 589-90. However, this rule does not require the testimony to be based on a scientific study, but allows testimony based on "personal experience" if, in the trial court's view, there is a sufficient level of "intellectual rigor" underlying the testimony. *Kumho Tire Co.*, 526 U.S. at 152. Indeed, "reliance upon extensive personal experience or specialized knowledge is an acceptable ground for the admission of expert testimony." *Derouen v. Hercules Liftboat Co., LLC*, No. CV 13-4805, 2015 WL 13528499, at *3 (E.D. La. Sept. 4, 2015).

A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error

rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has considerable leeway in determining how to test an expert's reliability.").

With respect to the relevancy prong, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Ultimately, a court should not allow its "gatekeeper" role to supersede the traditional adversary system, or the jury's place within that system. *Scordill v. Louisville Ladder Grp., LLC*, No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003). As the Supreme Court noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Generally, questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

3

## **PARTIES' ARGUMENTS AND DISCUSSION**

Plaintiff argues that this Court should exclude Mr. Candies' opinions because he: (1) failed to timely disclose certain source materials, (2) makes incorrect factual assertions, (3) makes impermissible legal conclusions, (4) uses unreliable methodology, (5) is unqualified, and (6) renders opinions that are highly prejudicial and of little probative value. (Rec. Doc. 204-1, at 8–20).

### I.    Disclosure of Source Materials

Plaintiff first seeks to exclude "every portion of Mr. Candies' testimony which relies on non-public, undisclosed, or late provided sources." (Rec. Doc. 204-1, at 9). These sources include Louisiana P.O.S.T. (Peace Officer Standards and Training) Master Instructor materials from 2014 and 2016, which Plaintiff claims were not disclosed, and the *Use of Force Toolbox Concept – Instructor Development Training*, which Plaintiff claims was disclosed only after the May 4, 2025 deadline to disclose expert reports. *Id.* Plaintiff argues that Federal Rule of Civil Procedure 26(a) required Mr. Candies to provide these source materials by May 4, 2025, and that since Mr. Candies failed to timely disclose this information, he cannot present opinions which rely on this information at trial. *Id.*

LSP Defendants assert that none of the parties included source materials relied on by their experts in their expert disclosures, seemingly suggesting that Rule 26(a) does not require an expert to disclose their source materials when they disclose their report. (Rec. Doc. 217, at 7). Further, LSP Defendants argue that Plaintiff suffered no prejudice from these failed or untimely disclosures. *Id.* at 8.

4

Rule 26(a) requires an expert report contain (i) a complete statement of all opinions the witness will express and the basis and reasons for them [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)(ii). If a party fails to disclose such information, "the party is not allowed to use that information . . . to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

*A. Louisiana P.O.S.T. Master Instructor Materials*

LSP Defendants have failed to provide Plaintiff with the Louisiana P.O.S.T. Master Instructor materials from 2014 and 2016. In his report, Mr. Candies cites these two sources a total of 11 times. (Rec. Doc. 204-4, at 10, 11, 12, 16, 17, 19, 20, 22, 23, 27). In his amended report, Mr. Candies explains that he did not reference any written material for these citations. (Rec. Doc. 204-5, at 3). Mr. Candies claims that these were instructor courses, and he relied on the practicums taught during the training as his sources for these citations. *Id.* Mr. Candies explains during his deposition that there are written materials regarding Louisiana P.O.S.T. training standards. (Rec. Doc. 217-2, at 90). However, Mr. Candies asserts that he did not rely on these written materials in formulating his opinions. *Id.*

The Court finds that Rule 26(a) does not require Mr. Candies to furnish to Plaintiff either the Louisiana P.O.S.T. Master Instructor Materials or the written Louisiana P.O.S.T. training standards. While Mr. Candies must disclose the sources upon which he relies, he does not have to provide documents which do not exist. Mr. Candies asserts that he relied exclusively on the undocumented practicums to form

5

his opinions, and he did not rely on any written Louisiana P.O.S.T. materials. (Rec. Doc. 217-2, at 90). Accordingly, the Court will not exclude Mr. Candies' testimony for failure to provide these sources.

*B. Use of Force Toolbox Concept – Instructor Development Training*

In his amended report, Mr. Candies admits that his original report contains an erroneous citation. (Rec. Doc. 204-5, at 3). Mr. Candies explains that he incorrectly cites to *Candies & Hass, 2021* when he should have cited to the *Use of Force Toolbox Concept – Instructor Development Training Id.* Mr. Candies asserts that he made this mistake on four occasions throughout his report. (Rec. Doc. 204-4, at 16, 25, 31, 33). Mr. Candies disclosed the correct source to Plaintiff on May 22, 2025 (Rec. Doc. 204-5) which was 18 days after the May 4, 2025 deadline provided in the Scheduling Order but 39 days before Mr. Candies' June 30, 2025 deposition. (Rec. Doc. 217-2, at 1).

The Court finds that Mr. Candies' failure to timely disclose this source is harmless. "To determine whether a violation of Rule 26 is harmless under Rule 37(c), the [C]ourt considers: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Hayes v. S. Fid. Ins. Co.*, 14-cv-376, 2014 WL 5305683, *14 (E.D. La. Oct. 15, 2014) (Lemmon, J.).

The source omitted by LSP Defendants is important and must be disclosed, but Plaintiff has "not articulated a specific prejudice that would justify excluding the expert[s] from testifying at trial." *Id.* at *15. After acknowledging his mistake, Mr.

6

Candies disclosed his corrected source on May 22, 2025 (Rec. Doc. 204-5, at 3). Plaintiff had 39 days to prepare for Mr. Candies' June 30, 2025 deposition while considering Mr. Candies' corrected source. Accordingly, the omission was harmless, and the Court will not exclude Mr. Candies for "non-compliance with the technical terms" of Rule 26(a). *Hayes*, 2014 WL 5305683, at *15.

## II. Factual Assertions

Plaintiff next seeks to exclude information from the "Incident Location" section of Mr. Candies' report where he states that the shooting incident occurred in a "very heavily populated" and "very busy" suburb near a Chick-fil-A restaurant. (Rec. Doc. 204-1, at 10). Plaintiff argues that there are insufficient facts to establish that the shooting occurred in a very populated and busy area and that it is factually incorrect to assert that a Chick-fil-A was near the incident because the Chick-fil-A was not constructed until after the shooting incident occurred. (Rec. Doc. 204-1, at 11).

LSP Defendants argue that evidence in the record supports that the shooting incident occurred in a populated area. (Rec. Doc. 217-1, at 10). But LSP Defendants do not contest the non-existence of a nearby Chick-fil-A at the time of the shooting. (Rec. Doc. 217, at 9).

### A. *Population*

The record reflects that the shooting occurred on Airline Highway and in Metairie, Louisiana, a suburb of the New Orleans metropolitan area. (Rec. Doc. 1, at 6). In 2021, Metairie had a population of approximately 141,000 people and a population density of over 6000 people per square mile. Metairie, LA–Population

2025, *World Population Review*, https://worldpopulationreview.com/us-cities/louisiana/metairie (last visited December 4, 2025). The Court will not get into the nuance of whether Metairie qualifies as a "heavily populated" suburb. Still, the record is replete with facts that the area is sufficiently populated such that the Court is unwilling to say that Mr. Candies' characterization is clearly erroneous. (Rec. Doc. 217, at 9 (showing images of the shooting area with multiple vehicles on Airline Highway and several businesses nearby)). Accordingly, the Court will not exclude Mr. Candies' statements concerning the heavy population of Metairie.

### B. *Chick-fil-A*

Still, as LSP Defendants and Mr. Candies concede, there was no Chick-fil-A restaurant near the shooting at the time it took place. (Rec. Doc. 217, at 9). A quick Google Earth search confirms this concession. Map showing 3501 Airline Dr., Metairie, LA 70001 on Nov. 2, 2021, *Google Earth*, https://earth.google.com/web/search/3501+Airline+Dr,+Metairie,+LA+70001 (last visited Dec. 4, 2025). Accordingly, the Court finds that any reference to a Chick-fil-A being near the shooting incident must be stricken.

### III. Legal Conclusions

Plaintiff next argues that Mr. Candies offers impermissible legal conclusions that this Court should exclude. (Rec. Doc. 204-1, at 12). Surprisingly, LSP Defendants do not contest that Mr. Candies offers impermissible legal conclusions in his report. Instead, they argue that Mr. Candies testimony is permissible because Plaintiff's expert Dr. Kirkham does the same thing. (Rec. Doc. 217, at 11–13).

The Court has already thoroughly discussed the issue of impermissible legal conclusions in its October 2, 2025 Order and Reasons, which held that Dr. Kirkham may not offer inadmissible legal conclusions (Rec. Doc. 239, at 5–8) and its November 21, 2025 Order and Reasons, which held that EJLD Defendants' expert Mr. Ryan may not provide legal standards because that job is reserved for the Court. (Rec. Doc. 248, at 5 (citing *Askanse v. Fatjo*, 130 F. 3d 357, 673 (5th Cir. 1997)). Upon review of Mr. Candies' report, the Court finds troubling the following opinions:

> The evaluation standard to be used in such incidents is that of objective reasonableness considering the totality of the circumstances, that existed at the time the force was used, as established by the United States Supreme Court in the landmark case of Graham v. Connor. This is done by analyzing the specifics of the event to identify if one of the four "Graham Factors" exist. The Graham Factors are four distinct situations designated by the United States Supreme Court, in the Graham v. Connor decision, each in and of itself establishing probable cause for an officer to be justified to use force in accordance with the 4th Amendment. Those four factors are 1) Severity of the Crime, 2) Immediacy of the Threat, 3) Active Resistance, and 4) Resistance by Flight or Escape. (Graham v. Connor, 1989) (Rec. Doc. 204-4, at 32).
>
> Based on the facts, materials, analyses, evaluations, **and the standard for evaluating police use of force established by the U.S. Supreme Court**, I have determined that Trooper Dowdle's performance and actions in this tragic incident were consistent with Louisiana P.O.S.T. training standards, Louisiana State Police Operating and Training Standards, and commonly accepted national training standards. *Id.* (emphasis added).
>
> This was the only **reasonable** response available to Trooper Dowdle. *Id.* at 33 (emphasis added).

Mr. Candies clearly articulates the legal standard set forth in *Graham v. Conner*, 490 U.S. 386 (1989) and in so doing takes on a role reserved exclusively for the Court. He then invades the province of the jury when he explicitly states that Officer Dowdle's

9

use of force complied with those legal standards. He even impermissibly opines on the reasonableness of Officer Dowdle's actions. Accordingly, the Court will exclude these opinions.

### IV. Mr. Candies' "Critical Incident/Use of Force Analysis"

Plaintiff next seeks to exclude Mr. Candies' entire "Critical Incident/Use of Force Analysis" in his report by arguing that this section contains impermissible factual recitations of shooting Defendant Dowdle's version of events. (Rec. Doc. 204-1, at 14–15). This analysis includes Mr. Candies' statement that "Trooper Dowdle's top priority at this point is to contain the armed suspect and prevent his access to potential victims." (Rec. Doc. 204-4, at 10).

LSP Defendants argue that Plaintiff offers no basis to exclude all of Mr. Candies' Critical Incident/Use of Force analysis. (Rec. Doc. 217, at 13) LSP Defendants contend that Mr. Candies bases his opinions on state and nationally accepted police training standards and his cited material and not on Defendant Dowdle's version of events. *Id.* at 14. Lastly, LSP Defendants argue that it would be "inconsistent and prejudicial" for this Court to permit Plaintiff's expert Dr. Kirkham to analyze the body cam footage while foreclosing Mr. Candies from doing so. *Id.*

The Court agrees with LSP Defendants. Plaintiff fails to adequately explain why this Court should exclude all 24 pages of Mr. Candies' Critical Incident/Use of Force Analysis. The Court is unconvinced that Mr. Candies is relying solely on Officer Dowdle's version of events to determine whether Officer Dowdle complied with his training. In his Critical Incident/Use of Force Analysis, Mr. Candies reviews and

10

articulates his interpretation of the evidence as a police use of force expert and cites multiple sources to explain why he believes Officer Dowdle complied with his training. (Rec. Doc. 204-4, at 9–31). When stating Officer Dowdle's "top priority," Mr. Candies testified during his deposition that he relied on the deposition of multiple officers and the information in the case report. (Rec. Doc. 217-2, at 108–09). Accordingly, the Court will not exclude Mr. Candies' use of force analysis.

## V. Reliability

Plaintiff next challenges the reliability of Mr. Candies' report. (Rec. Doc. 204-1, at 15). Plaintiff argues that Mr. Candies' report is unreliable because it is not "grounded in the methods and procedures of science" and is instead based on Mr. Candies' experience and education. *Id.*

This Court rejected a similar challenge to Plaintiff's expert Dr. Kirkham in its prior Order and Reasons (Rec. Doc. 239, at 16–17), and the Court will do so here. Expert testimony does not always need to be based on scientific testing. "Rule 702 does not distinguish between scientific knowledge and technical or other specialized knowledge but makes clear that any such knowledge might become the subject of expert testimony." *Kumho Tire v. Carmichael*, 526 U.S. 137, 156 (1999). Mr. Candies may base his opinions on his technical or specialized knowledge regarding applicable police training and procedures. Accordingly, the Court will not exclude Mr. Candies' opinions for lack of a reliable methodology.

## VI. Qualifications

Plaintiff first argues that this Court should not qualify Mr. Candies as an expert because "he has never been qualified as an expert in any case." (Rec. Doc. 204-1, at 1). However, as LSP Defendants correctly argue, Mr. Candies can qualify as an expert without prior expert testimony. The Fifth Circuit makes clear that "to qualify as an expert, the witness must have such **knowledge or experience in his field or calling** as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F. 3d 514, 524 (5th Cir. 2004) (citation modified) (emphasis added) (quoting *United States v. Bourgeois*, 950 F. 2d 980, 987 (5th Cir. 1992)). An expert may be qualified through their experience, but it is experience in the requisite field of study, not experience testifying, that matters.

Mr. Candies has a "38-year career as a professional law enforcement officer and instructor." (Rec. Doc. 204-4, at 3). He has received over 7600 hours of specialized law enforcement training including, but not limited to "Use of Force, De-escalation, Defensive Tactics, and Officer survival" and holds instructor certifications in these areas. *Id.* He is a "Louisiana Peace Officer Standards and Training" Master Instructor and has authored courses on *Police Use of Force*, *Response to Deadly Force*, and *Active Shooter Response. Id.* And, contrary to Plaintiff's contention, Mr. Candies has been qualified as an expert witness in police training techniques in this Court. "I am going to qualify [Mr. Candies] as an expert in police training techniques so that he can answer the hypothetical." *Jury Trial Excerpt: Transcript of Testimony of Mark Candies*, at 19:10–11, *Young v. Smith*, No. 03-cv-311, (E.D. La. Mar. 17, 2005) (Rec.

Doc. 110). Accordingly, the Court finds Mr. Candies qualified to opine on applicable police use of force training, standards, and procedures and whether Officer Dowdle complied therewith.

Plaintiff next argues that Mr. Candies is unqualified to render any opinions on Mr. Asante-Chioke's mental health and mental state and on human perception/reaction times. (Rec. Doc. 204-1, at 17–18). LSP Defendants do not contest Mr. Candies' lack of qualifications in these fields. Instead, they argue that Mr. Candies should be allowed to render opinions in this area because Plaintiff's expert Dr. Kirkham, who is not a mental health expert, made similar opinions in his report. (Rec. Doc. 217, at 17).

The Court agrees with Plaintiff. An expert must be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F. 3d 935, 937 (5th Cir. 1999). In his deposition, Mr. Candies testified that he was neither a mental health professional nor a human factors expert. (Rec. Doc. 217-2, at 46). Further, Mr. Candies offers no information in his report to suggest that he is qualified to opine on the mental health of Mr. Asante-Chioke or on human perception/reaction time.

The Court has already addressed LSP Defendants' challenges to Dr. Kirkham in its prior Order and Reasons. (Rec. Doc. 239). LSP Defendants did not contest Dr. Kirkham's qualifications to opine on the mental state of Mr. Asanti-Chioke, and Dr.

13

Kirkham did not opine on human perception/reaction time. The Court will not allow Mr. Candies to render opinions on which he is unqualified simply because Dr. Kirkham rendered similar testimony to which LSP Defendants did not object. Accordingly, the Court will exclude Mr. Candies' opinions regarding the mental health of Mr. Asante-Chioke, as well as his opinions on perception/reaction times.

## VII.   Prejudice and Probative Value

Plaintiff next seeks to preclude Mr. Candies from comparing Mr. Asante-Chioke's actions to the Uvalde School Shooter. (Rec. Doc. 204-1, at 19). Plaintiff argues that any references to the Uvalde School Shooting should be excluded under Federal Rule of Evidence 403. LSP Defendants argue that a comparison to the Uvalde School Shooting is relevant and probative to show what could happen if a responding officer hesitates to use deadly force. (Rec. Doc. 217, at 18–19.)

The Court agrees with Plaintiff. Evidence should be excluded when "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.  A comparison between Mr. Asante-Chioke and the Uvalde School Shooter is grossly and unfairly prejudicial, carries very little probative value, and risks a verdict based on emotion rather than evidence. Accordingly, the Court will exclude Mr. Candies' references to the Uvalde School Shooting.

## **CONCLUSION**

Considering the foregoing *Motion to Exclude the Testimony of Mark Candies* **(Rec. Doc. 204)** filed by Plaintiff Malikah Asante-Chioke,

**IT IS HEREBY ORDERED** that the motion is **GRANTED** in part and **DENIED** in part as follows. Mr. Candies is allowed to testify as a use of force expert in this case, and he may opine on whether Officer Dowdle complied with his training. However, Mr. Candies will not be able to opine that the shooting took place near a Chick-fil-A. He also may not state the law under *Graham v. Conner* or opine on whether Officer Dowdle's actions complied therewith. Mr. Candies cannot opine on the mental state or mental health of Mr. Asante-Chioke or human perception/reaction times. Lastly, Mr. Candies may not reference the Uvalde School Shooting.

New Orleans, Louisiana, this 12th day of December, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE