UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MALIKAH ASANTE-CHIOKE                                CIVIL ACTION

VERSUS                                              NO. 22-4587

NICHOLAS DOWDLE ET AL.                              SECTION: "J"(3)

## ORDER & REASONS

Before the Court are three motions for summary judgment: one filed by Defendant Officers Jonathon Downing, Gerard Duplessis, and Terry Durnin **(Rec. Doc. 255)**; one filed by Defendant Officer Nicholas Dowdle **(Rec. Doc. 262)**, and another filed by Plaintiff Malikah Asante-Chioke. **(Rec. Doc. 256)**. All motions are opposed. (Rec. Docs. 267, 269). Replies to all oppositions have been filed. (Rec. Docs. 272, 273, 274). Having considered the motions, the legal memoranda, the record, and the applicable law, the Court finds that Defendants' motions should be **GRANTED** and that Plaintiff's motion should be **DENIED**.[1]

---

[1] After the replies were filed, Plaintiff and Defendant Officers Downing, Duplessis, and Durnin each moved for leave to file notices of supplemental authority regarding new federal cases released after they filed their motions for summary judgment. (Rec. Doc. 277; Rec. Doc. 279). The motions were opposed. (Rec. Doc. 278; Rec. Doc. 280; Rec. Doc 281). Plaintiff sought to submit a Fifth Circuit case and a Tenth Circuit case that are both factually distinguishable from this case and unhelpful to the Court. Defendants sought to submit two Supreme Court cases which support that qualified immunity still applies to § 1983 claims. These cases are similarly unhelpful, as the Court does not intend to overturn decades of qualified immunity doctrine upon Plaintiff's request. However, even if the Court had allowed the parties to supplement, these cases would not have changed the Court's decision.

1

## FACTUAL BACKGROUND

On the night of November 21, 2021, Jabari Asante-Chioke was traversing down Airline Highway carrying a knife in one hand and a gun in the other. Several officers tried to stop Mr. Asante-Chioke as he intermittently jogged across varying lanes of traffic and waved the gun in the air. Mr. Asante-Chioke continuously ignored various officer commands to stop, show his hands, drop the gun, and get on the ground. One officer tried to taze Mr. Asante-Chioke but was ultimately unsuccessful. The situation escalated as each attempt to subdue Mr. Asante-Chioke failed.

The tense scene culminated when Defendant Officers Nicholas Dowdle, Johnathan Downing, and Gerard Duplessis caught up to Mr. Asante-Chioke as he slowed to a brisk walk. All three officers had their guns drawn as they followed Mr. Asante-Chioke along a dimly lit section of Airline Highway. Officer Dowdle, who was closest to Mr. Asante-Chioke, told him, "You put the gun on me, you're going to get shot." (Rec. Doc. 262-4, Ex. 1, at 05:38–05:39). Mr. Asante-Chioke responded that he was "ready to die" and, seconds later, raised his gun towards the officers. *Id.* at 05:44–05:52. All three officers opened fire. The continuous shooting lasted for 4.2 seconds. During this time, Mr. Asante-Chioke fell forward onto the ground with his hands outstretched and dropped his gun right before his hands hit the ground. He then landed on his hands and knees before ultimately rolling on the ground with his back facing officers. The shooting then ceased. Officers fired a total of thirty-six shots. Fifteen shots struck Mr. Asante-Chioke, who died from his wounds.

2

Plaintiff Malikah Asante-Chioke is Mr. Asante-Chioke's daughter, and she brings this suit individually and on behalf of her father. She asserts a 42 U.S.C. § 1983 excessive force claim and four state law claims against the shooting officers, as well as a negligent supervision and training claim against their supervisors.

Defendants move for summary judgment on Plaintiff's excessive force claims. Plaintiff moves for summary judgment on her excessive force claim against Officer Dowdle.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little,* 37 F.3d at 1075.

## **DISCUSSION**

Defendants argue that they have qualified immunity from suit. Plaintiff argues that the qualified immunity doctrine does not apply to § 1983 claims. She also argues that, even if qualified immunity applies, the Defendants are not entitled to it.

As an initial matter, the Court again rejects Plaintiff's argument that the qualified immunity doctrine does not apply. Since Plaintiff last raised this argument,

neither the Fifth Circuit nor the Supreme Court have overturned decades of qualified immunity jurisprudence on the basis that Plaintiff requests, and therefore this Court must also refrain from doing so. *Asante-Chioke v. Dowdle*, CV 22-4587, 2024 WL 2863379 at *4 (E. D. La. Jun. 6, 2024) (Barbier, J.) (rejecting Plaintiff's argument and finding that the qualified immunity doctrine applies to her § 1983 claims); *See also Zorn v. Linton*, 146 S. Ct. 926, 930–31 (2026) (granting the defendant officer qualified immunity against the plaintiff's § 1983 excessive force claim). Therefore, the Court will proceed with the required qualified immunity analysis.

"Qualified immunity shields public officials sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021) (internal citations omitted). The qualified immunity defense has two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff and (2) whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

A qualified immunity defense alters the usual summary judgment burden of proof; when an official pleads the defense of qualified immunity, "the burden shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). If the official's actions violated a clearly

established law, the court then asks whether the actions were objectively reasonable in light of "law which was clearly established at the time of the disputed action." *Id.* (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

The first step of the qualified immunity analysis asks whether there was a violation of a constitutional right. Plaintiff's § 1983 claim is for excessive force. To establish a claim for excessive force, a plaintiff must demonstrate "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017). Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on the facts and circumstances of each particular case. *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009). That inquiry requires consideration of three non-exclusive factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The first element is easily satisfied because officers indisputably shot and killed Chioke. However, upon review of the record evidence in the light most favorable to Plaintiff, the Court finds that each shooting officer's use of force was not clearly unreasonable.

Mr. Asante-Chioke pointed a presumably loaded gun at the officers before they opened fire. Minutes before the shooting, Mr. Asante-Chioke was behaving erratically, refusing to comply with direct police orders, evading police, and carrying

6

a gun and a knife. *See Hodge v. Engleman*, 636 F. Supp. 3d 727, 735 (N.D. Tex. 2022), aff'd, 90 F.4th 840 (5th Cir. 2024) (explaining that "[w]hen considering the great threat posed to an officer, the Fifth Circuit gives great weight to whether a suspect is armed and defiant") (referencing three Fifth Circuit cases).

Seconds before he raised his gun, Mr. Asante-Chioke stated that he was "ready to die." (Rec. Doc. 262-4, Ex. 1, at 05:44–05:45). Thus, a reasonable officer reacting to this event as it happened had probable cause to believe that Mr. Asante-Chioke posed a serious threat of physical injury or death to the officers. Officers may use deadly force in those circumstances without violating the Fourth Amendment. *See*, e.g. *Garza v. Briones*, 943 F.3d 740, 748 (holding that use of deadly force was justified where suspect pointed a gun at an officer); *see also Manis*, 585 F.3d at 843 ("An officer's use of deadly force is not excessive . . . when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others.")

Plaintiff argues that Mr. Asante-Chioke was experiencing a mental health crisis at the time of the shooting. However, that information was not knowable to the officers at the time that they opened fire, so it cannot factor into the qualified immunity analysis. *White v. Pauly* 580 U.S. 73, 77 (2017) (*per curiam*) (In assessing whether an officer is entitled to qualified immunity, "the Court considers only the facts that were knowable to the defendant officers" at the time.) Even if the officers had known, it did not affect the danger that they immediately faced when Mr. Asante-Chioke pointed a deadly weapon in their direction. Accordingly, the Court finds that it was reasonable for the officers to open fire upon Mr. Asante-Chioke.

Plaintiff argues that the shooting became unreasonable at some moment during its 4.2 seconds. According to Plaintiff, Mr. Asante-Chioke became incapacitated as soon as he dropped the gun, and any shot fired afterwards was unreasonable.

Defendants claim that the officers did not see Mr. Asante-Chioke drop his gun. They also argue that they could not clearly see Mr. Asante-Chioke's hands as he fell to the ground. They also contend that Mr. Asante-Chioke was not incapacitated during the shooting, and he could have returned fire. Defendants also note that humans have a delayed reaction time, which prevents them from instantly ceasing fire the exact moment a threat is ended.

The reasonableness of police force "requires analyzing the totality of the circumstances." *Barnes v. Felix*, 605 U.S. 73, 80 (2025) (internal quotations omitted). Considering the totality of the circumstances, the Court finds that the continuous shooting was not clearly unreasonable. All three shooting officers testified that they did not see Mr. Asante-Chioke drop his gun. The shooting occurred at night in a dimly lit section of Airline Highway. Officer Dowdle began shooting while 21 feet away from Chioke and was 29 feet away by the shooting's end. (Rec. Doc. 267-21, at 21.) Officers Downing and Duplessis were around 68 feet away from Mr. Asante-Chioke throughout the shooting. *Id.* The Court has reviewed Officer Dowdle's unaltered bodycam footage, and it does not see Mr. Asante-Chioke drop the gun. Mr. Asante-Chioke is wearing dark clothing, and he quickly moves and changes position during the 4.2 seconds of shooting. His hands are not clearly visible during that time. Only

by viewing a frame-by-frame pdf of a zoomed-in stabilized version of Officer Dowdle's bodycam footage, prepared by Plaintiff's expert Cole Young, is the Court able to observe the exact moment that Mr. Asante-Chioke dropped his gun. The officers did not have the benefit of this analysis, and the Court cannot use it to retroactively assess the reasonableness of their actions from the calm reserve of chambers.

Plaintiff argues that the officers "should have seen—and did see—Mr. Asante-Chioke drop his gun." (Rec. Doc. 276, at 15). However, these allegations, without more, are insufficient to overcome a qualified immunity defense. *Orr. v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) ("Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are all insufficient to overcome immunity.") (internal quotations omitted); *see also Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (explaining that a party opposing a motion for summary judgment on a qualified immunity defense must "identify specific evidence in the . . . record demonstrating that there is a material fact issue concerning the essential elements of its case.") Plaintiff must provide evidentiary support to suggest that a reasonable officer on the scene could or should have seen Mr. Asante-Chioke drop his gun during the 4.2 seconds of continuous fire. She offers none. Plaintiff thus fails to provide a genuine dispute of material fact as to whether a reasonable officer would have seen Mr. Asante-Chioke drop his gun. Accordingly, the Court finds that it was not clearly unreasonable for the shooting officers to believe that Mr. Asante-Chioke was stilled armed.

Since it was not clearly unreasonable for officers to believe that Mr. Asante-Chioke was still armed, it was not clearly unreasonable for the officers to continue firing. As Defendants expert John Ryan, a former officer for 20 years, explained, "the number of shots fired and the position of Mr. Asante-Chioke's body would not diminish the threat as long as he was still in possession or proximity to his firearm and the officers reasonably perceived that he was not incapacitated." (Rec. Doc. 255-12, at 67–68). Dowdle's bodycam footage shows that Mr. Asante-Chioke continuously moved throughout the shooting. Mr. Asante-Chioke even raises his arm after the shooting, suggesting that he may have been capable of retrieving his gun and returning fire. The dimly lit area combined with Mr. Asante-Chioke's dark clothing would have made it extremely difficult for officers to determine whether Mr. Asante-Chioke was struck by bullets and whether he was incapacitated.

After reviewing the stabilized zoomed-in frame-by-frame stills of Dowdle's bodycam footage, the Court notes that the firing continued for approximately 1.5 seconds after Mr. Asante-Chioke turned his back to the officers. Plaintiff may be correct, in hindsight, that Mr. Asante-Chioke was incapacitated during that time and was unable to return fire. But that is not enough to find that the officers' actions were clearly unreasonable. As one federal district court explained, "[A]lthough it is possible that [the suspect]'s ability to pose a serious threat to [officers] ended before the last shot was fired, it is unreasonable to expect officers acting in response to a drawn weapon to stop and reevaluate the threat after each shot." *Garza v. Briones*, No. CV-16-251, 2018 WL 8868510, at *5 (S.D. Tex. Sept. 13, 2018), aff'd, 943 F.3d 740 (5th

10

Cir. 2019); *see also*, *Hodge v. Engleman*, 636 F. Supp. 3d at 735, 736 (N.D. Tex. 2022), aff'd, 90 F.4th 840 (5th Cir. 2024) (holding that the officer was entitled to qualified immunity even though "some shots were fired after [the suspect] fell to the ground," but "the officers immediately ceased shooting within one second after [the suspect]'s incapacitation and did not resume firing their weapons at any point after.") *see also* *Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010) (explaining that requiring an officer to stop shooting and "reevaluate whether a deadly threat has been eliminated after each shot . . . places additional risk on the officer not required by the Constitution.")

Two of Defendants' experts testified about the reactionary gap between the moment that an officer perceives a threat of danger and the moment that an officer responds to those dangers. (Rec. Doc. 262-26, at 31–32; Rec. Doc. 262-27, 11–12). The expert's explained that this same reactionary gap also occurs between the moment an officer perceives that a threat is over and responds accordingly. After reviewing Plaintiff's expert Cole Young's stabilized still frames, the Court finds that officers did not begin firing until .9 seconds after Mr. Asante-Chioke began raising his gun toward their direction. It stands to reason that the officers should be afforded a similar period to stop firing. This expert testimony further strengthens the Court's conclusion that the shooting officers' actions were not clearly unreasonable.

Even if the shooting officers' actions were clearly unreasonable, Plaintiff fails to prove that the officers violated a clearly established constitutional right. "A Government official's conduct violates clearly established law when, at the time of

11

the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alternations in original omitted). In other words, a controlling court must have previously held the "very action in question" to be unlawful. *Anderson*, 483 U.S. at 640. "Where no controlling authority specifically prohibits [the official]'s conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).

Plaintiff argues that the shooting Defendants violated clearly established Fifth Circuit law under *Roque v. Harvel,* 993 F.3d 325 (5th Cir. 2021) and *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268 (5th Cir. 2015). Defendants disagree, arguing that the Fifth Circuit cases of *Garza v. Briones*, 943 F.3d 740 (5th Cir. 2019) and *Hodge v. Engleman*, 90 F.4th 840 (5th Cir. 2024) show that the shooting officers' actions were lawful.  The Court will analyze each of these cases in turn.

In *Roque*, multiple officers responded to the scene where about 225 feet away Jason Roque was pacing the sidewalk in front of his home with a gun in his waistband. 993 F.3d 325, 330. Roque repeatedly asked officers to shoot and kill him while his nearby mother implored him not to kill himself. *Id.* Roque then pulled the gun out of his waistband, pointed it at his head, turned away from officers and threatened to kill himself. *Id.* An officer then, for the first and only time, commanded

12

Roque to put the gun down. *Id.* After this command, Roque turned around and faced the officers with the gun and pointed it in the air. *Id.* A split second later, Officer Harvel shot Roque with a semi-automatic rifle. *Id.* Video that captured the incident showed Roque "immediately double over, drop the gun, and stumble from the sidewalk" away from the officers and his mother. *Id.* About two seconds after the first shot, Officer Harvel fired a second shot but missed. *Id.* Roque continued floundering away from officers and his mother, but "two seconds later, Harvel took" a third shot, which struck and killed Roque. *Id.*

The district court granted Harvel's motion for summary judgment on qualified immunity grounds for the first shot but denied his motion as to the second and third shot. *Id.* at 331. The Fifth Circuit agreed, finding two genuine factual disputes as to (1) whether a reasonable officer would have seen Roque drop his "black gun on the white sidewalk in broad daylight" and (2) whether a reasonable officer would continue firing after the video showed Roque "double over and stumble into the street" away from the officers. *Id.* at 333–34.

In *Mason*, officers responded to a suspected armed robbery inside an apartment. 806 F.3d at 272. The apartment belonged to the suspect's girlfriend, and both the suspect and his girlfriend were inside the apartment when officers arrived. *Id.* The couple opened the door to reveal officers with their guns drawn. *Id.* at 273. As officers moved into the apartment, the girlfriend informed officers that Quamaine Mason, the suspect, was doing nothing wrong. *Id.* Officers ordered Mason and his girlfriend to put their hands up and get on the ground. *Id.* One of the officers saw that

13

Mason had a gun in his waistband, and the officer unleashed his dog. *Id*. The officer claimed that Mason reached for his gun when the dog attacked him and that he responded by opening fire. *Id*. The officer fired an initial round of five shots into different parts of Mason's body. *Id*. After the initial round, Mason was face down on the ground, and the officer temporarily stopped firing. *Id*. However, the officer claimed that Mason then moved to reach for his gun, so the officer fired two more shots into his back. *Id*. at 274.

Mason's girlfriend disputed the officer's claims. *Id*. at 273. She said that Mason never touched his gun or attempted to resist the officers. *Id*. She also said that after the initial five shots, Mason only raised and lowered his head but never moved for his gun. *Id*. One of the Defendant's experts also testified that Mason would have had great difficulty retrieving his gun after the initial round. *Id*.

The Fifth Circuit found that there were genuine issues of material fact concerning the final two shots, and whether they were rendered after Mason was incapacitated. *Id*. at 277. The Court emphasized the competing narratives between the officer and Mason's girlfriend as well as the expert's testimony. *Id*.

In *Garza*, an officer arrived at the front of a truck stop at night and observed Tomas Garza holding a handgun. 943 F.3d at 743. The officer drew his gun and advanced toward Garza while repeatedly ordering him to drop the gun. *Id*. Garza continuously ignored the officer's commands as several more officers arrived on the scene. *Id*. The arriving officers formed a semi-circle around Garza with their weapons drawn. *Id*. Garza raised his weapon and pointed it in the direction of one of the

14

officers. *Id.* at 744. That officer then fired his weapon at Garza. *Id.* The other officers, believing Garza had fired his weapon, also fired. *Id.* The officers "continued to fire until Garza fell to the ground and stopped moving." *Id.* The officers continuously fired for eight seconds, firing a total of sixty-one shots. *Id.* Eighteen shots hit Garza, who died from his wounds. *Id.* Relying on video evidence which captured the shooting, the Court found no genuine disputes of material fact. *Id.* at 747. The Court held that the shooting officers were entitled to qualified immunity for all sixty-one shots. *Id.* at 748.

In *Hodge*, two officers attempted to pull over Schaston Hodge after observing him run a stop sign and turn without signaling. *Id.* at 842. Hodge continued driving with police in tow until he reached his driveway. *Id.* at 842–43. One officer then sprinted towards Hodge and ordered him to show his hands and step out of the vehicle. *Id.* at 843. Hodge exited the vehicle holding a gun pointed at the other officer. *Id.* Both officers then fired a total of 19 shots at Hodge for "approximately three to four seconds." *Hodge*, 636 F.Supp.3d at 732. Sixteen of those shots hit Hodge, who died from his wounds. *Hodge,* 90 F.4th at 843. The Fifth Circuit held that the officers were entitled to qualified immunity. *Id.* at 847.

The Court finds that this case is more factually analogous to *Garza* and *Hodge* than it is to *Mason* and *Roque*. Like here, *Garza* and *Hodge* concerned a defiant suspect who pointed a gun at officers. "When considering the threat posed to an officer, the Fifth Circuit gives great weight to weather a suspect is armed and defiant." *Hodge v. Engleman*, 636 F.Supp.3d 727, 735 (N.D. Tx. 2022) *aff'd* 90 F.4th 840 (5th Cir. 2024) (referencing three Fifth Circuit cases). Also, like here, in both

15

cases the officers continuously fired without stopping, and they did not have time to stop and reevaluate the threat due to the exigency of the situation. *See Garza*, 943 F. 3d at 745 (finding that "it is unreasonable to expect officers acting in response to a drawn weapon to stop and reevaluate the threat after each shot."); *see also Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010) (explaining that requiring an officer to "reevaluate whether a deadly threat has been eliminated after each shot . . . places additional risk on the officer not required by the Constitution.") Further, unlike here, in *Mason* and *Roque* the plaintiffs disputed the alleged threat posed to officers during the shooting and supported their disputes with evidence. *Roque*, 993 F.3d at 333. (disputing suspect's ability to pose a threat "with [unaltered] video and expert evidence"; *see also Mason*, 993 F.3d at 273 (disputing suspect's ability to pose a threat with conflicting accounts and expert testimony). This created genuine issues of material fact in those cases that are non-existent here. Thus, the Court finds that *Garza* and *Hodge* control, and the officers did not violate any clearly established rights at the time of the incident. Therefore, for those additional reasons, Defendants are entitled to qualified immunity.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' Motions for Summary Judgment **(Rec. Doc. 255; Rec. Doc. 262)** are **GRANTED**, and that Plaintiff's Motion for Summary Judgment **(Rec. Doc. 256)** is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's federal law claims are **DISMISSED with prejudice,** and that her state law claims are **DISMISSED without prejudice**. Plaintiff has failed to defeat qualified immunity on her federal law claims, and the Court declines to exercise supplemental jurisdiction over her remaining state law claims.

New Orleans, Louisiana, this 10th day of June, 2026.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

17